EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Lilliam Díaz Lizardi<br><br>Peticionaria<br><br>v.<br><br>Juan José Aguayo Leal<br><br>Recurrido | Certiorari<br><br>2004 TSPR 144<br><br>162 DPR _____ |

Número del Caso: CC-2004-154

Fecha: 8 de septiembre de 2004

Tribunal de Circuito de Apelaciones:

Circuito Regional VI

Juez Ponente:

Hon. Andrés E. Salas Soler

Abogada de la Parte Peticionaria:

Lcda. Idalia N. León Landrau

Abogada de la Parte Recurrida:

Lcda. Carmen Sara López García

Materia: División de Comunidad de Bienes

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EL TRIBUNAL SUPREMO DE PUERTO RICO

Lilliam Díaz Lizardi

    Peticionaria

                                Certiorari

        v.

Juan José Aguayo Leal

    Recurrido                   CC-2004-154

Opinión del Tribunal emitida por la Jueza Asociada SEÑORA FIOL MATTA

En San Juan, Puerto Rico, a 8 de septiembre de 2004.

Nos corresponde revisar una sentencia dictada por el Tribunal de Apelaciones el 16 de enero de 2004 y archivada en autos ocho días después. Dicha sentencia confirma la decisión del foro de instancia en un pleito sobre la división de la comunidad de bienes existente entre la Sr. Lilliam Díaz Lizardi y el Sr. Juan José Aguayo Leal. El 23 de marzo de 2004 ordenamos a la parte recurrida mostrar causa por la cual no debíamos revocar. Con la comparecencia de dicha parte pasamos a resolver.

I.

La Sra. Lilliam Díaz Lizardi y el Sr. Juan José Aguayo Leal sostuvieron un noviazgo por varios años. El 30 de julio de 1996, mientras aún eran novios, compraron una residencia localizada en la Urbanización Los Flamboyanes, D-15 en Gurabo. Como ambos eran solteros, adquirieron una participación sobre el bien inmueble del cincuenta por ciento (50%) cada uno. A través de R&G Mortgage Corporation asumieron una hipoteca con un balance original de $75,256.00. El pago mensual pactado fue de $601.00. En 1997 ambas partes compraron muebles y accesorios y los colocaron en la casa. Sin embargo, nunca se mudaron a ésta.

La relación de noviazgo finalizó en noviembre de 1998. Un mes después, el señor Aguayo comenzó a pagar la totalidad del pago mensual de la hipoteca. La casa estuvo deshabitada hasta diciembre de 1999, cuando el señor Aguayo comenzó a vivir ahí con su esposa, a quien, por no conocerse su nombre, se le denomina señora Aguayo Leal en la demanda. El señor Aguayo retuvo todo el mobiliario que había adquirido junto a la peticionaria, señora Díaz.

El 28 de noviembre de 2000 la señora Díaz presentó ante el tribunal de instancia una demanda sobre división de comunidad de bienes y cobro de dinero. Previo al juicio, que se celebró el 14 de julio de 2003, las partes estipularon que el bien inmueble tenía un valor de tasación de $105,000.00. También establecieron que al 1 de agosto de 2003 el balance de cancelación de la hipoteca era de

$70,204.41, por lo cual el valor neto ("equity") de la propiedad era de $34,795.59, es decir, la diferencia entre el valor de la propiedad y el balance de cancelación de la deuda. Estipularon que le correspondía a cada uno la mitad de esa cantidad ($17,397.79).

Como señalamos anteriormente, al finalizar la relación de noviazgo el señor Aguayo asumió el pago de la hipoteca, pagando por dicho concepto $601.00 mensuales desde diciembre de 1998 hasta agosto de 2003 y abonando en total $33,656.00. El foro de instancia determinó que el señor Aguayo tiene a su favor un crédito por la mitad de esta cantidad, que asciende a $16,828.00.[1] En cuanto a los bienes muebles, el señor Aguayo manifestó su intención de retener el juego de comedor, el juego de sala, un abanico de techo, la nevera, la estufa, la podadora de hilo y el acondicionador de aire, todos los cuales había usado desde que se mudó a la residencia. El tribunal estableció que el valor de estos bienes es de $5,297.80 y adjudicó a la señora Díaz un crédito por la mitad de dicha cantidad, es decir, $2,648.00. En cuanto a los demás bienes muebles, el señor Aguayo indicó que no tenía interés en retenerlos y el foro de instancia ordenó su devolución a la señora Díaz.

En la sentencia dictada el 29 de agosto de 2003, el Tribunal de Primera Instancia concluyó que el señor Aguayo

---

[1] El foro apelativo utiliza indistintamente las sumas de $16,258.21 y $16,828.00 como crédito del señor Aguayo por concepto de los pagos efectuados que hubieran correspondido a la peticionaria. La suma correcta es $16,828.00, es decir, la mitad de la totalidad de los pagos efectuados por el señor Aguayo.

adeuda a la señora Díaz $3,788.49. Esta suma es el resultado de la diferencia entre el crédito adjudicado a la señora Díaz, equivalente a la mitad del valor neto ("equity") de la propiedad inmueble ($17,397.79) y la cantidad que el tribunal resolvió que ella adeudaba al señor Aguayo, que era, como vimos, la mitad de los pagos de la hipoteca que éste había efectuado por varios años ($16,828.00), más la mitad del valor de los bienes muebles que el señor Aguayo usó e interesaba retener ($2,648.00).

La señora Díaz acudió ante el Tribunal de Apelaciones mediante recurso de apelación, alegando como único error que el foro de instancia se equivocó "al reconocerle un crédito al demandado-apelado por el cincuenta por ciento (50%) del pago mensual del préstamo hipotecario, privando a la parte demandante-apelante de su derecho a que se le compense adecuadamente por el tiempo que el demandado-apelado tuvo uso y disfrute exclusivo de los bienes en comunidad."

El tribunal apelativo intermedio confirmó la decisión del foro de instancia. En su sentencia, dispuso que no se había privado a la señora Díaz de su participación en el bien común y que no le correspondía un crédito adicional. También concluyó que el señor Aguayo poseyó el bien inmueble a nombre propio y a nombre de la apelante al ejercer la posesión inmediata del bien. En la sentencia recurrida se hizo hincapié en que la señora Díaz no se opuso a que el señor Aguayo poseyera el bien ni instó ningún recurso interdictal para acceder a la posesión que

le correspondía. El Tribunal de Apelaciones concluyó lo siguiente:

> Si la Apelante no aportó al préstamo hipotecario por más de cuatro (4) años, ni ejercitó su derecho de posesión del bien, y más aún, no objetó oportunamente la posesión y disfrute que del bien común hiciera el Apelado, no puede ahora aspirar a ganar un crédito por la porción de los pagos que le correspondía abonar y que no hizo. Mucho menos puede la Apelante movernos a concederle una compensación por la posesión que ella misma renunció.

El 1 de marzo de 2004 la señora Díaz acudió ante nosotros mediante recurso de certiorari. En su primer error alega que el Tribunal de Apelaciones se equivocó "al concluir que la posesión exclusiva por parte del recurrido sobre los bienes objeto de la comunidad de bienes entre las partes se dio no sólo a su nombre, sino también a nombre de la peticionaria ya que se trataba de un ejercicio de posesión de la peticionaria a través del recurrido." Expone otros tres errores que se refieren a la misma controversia: su alegado derecho a recibir un crédito por el tiempo en que el recurrido estuvo usando de modo exclusivo los bienes comunitarios.

El 23 de marzo de 2004 concedimos término a la parte recurrida para que expresara los motivos por los cuales no debíamos expedir el auto solicitado. Dicha parte acudió ante nosotros oportunamente. Alegó que la señora Díaz nunca mostró interés en vivir en la residencia, que poseyó la misma a nombre de él y de ella y que le corresponde a él el crédito del cincuenta por ciento (50%) del pago de la hipoteca que la señora Díaz no aportó, según lo determinó

el foro de instancia. Hemos estudiado detenidamente el expediente y a la luz del derecho aplicable decidimos expedir el auto de certiorari para modificar la decisión del Tribunal de Primera Instancia.

## II.

La controversia medular del recurso que nos ocupa gira en torno al efecto que tiene el uso exclusivo de los bienes muebles e inmuebles comunitarios por uno de los copropietarios, en el cómputo final del crédito que le corresponde a cada uno al momento de la liquidación.

Existe una comunidad de bienes cuando la propiedad de una cosa o de un derecho pertenece de modo pro indiviso a varias personas. Artículo 326 del Código Civil, 31 L.P.R.A. sec. 1271. Algunos de los derechos reales susceptibles de tenencia en comunidad son la propiedad, el usufructo, la servidumbre y los derechos reales de garantía. José Puig Brutau, *Fundamentos de Derecho Civil*, Tomo II, Volumen II, pág. 12-13, (1973). Los tratadistas utilizan los términos comunidad ordinaria, copropiedad o condominio para referirse a la situación de comunidad sobre el derecho de propiedad. Véase id. en la pág. 24. Es decir, la situación especial de una comunidad que se distingue porque "la propiedad de una cosa corporal pertenece a una pluralidad de personas, por cuotas cualitativamente iguales." Eduardo Vázquez Bote, *Derechos Reales II*, VIII, en la pág. 9, (1993).

El tipo de comunidad que regula nuestro ordenamiento es la llamada comunidad romana, *condominium iuris romani*, en la que cada titular tiene una cuota ideal o alícuota de la cosa. José Ramón Vélez Torres, *Curso de Derecho Civil*, Tomo II, en la pág. 145 (1997). Se presume que dichas cuotas son iguales y que la participación de los comuneros será proporcional tanto en los beneficios como en las cargas. Artículo 327 Código Civil, 31 L.P.R.A. sec. 1272. De plano, conviene aclarar que al utilizar el concepto "beneficios" el Código se refiere al uso y a los frutos del bien comunitario. José Ma. Miguel González, *Comentario del Código Civil*, Tomo I, pág. 1073 (1991). En cambio, las cargas "son obligaciones anejas a la propiedad o derecho de que se trate; son las que se imponen al propietario como tal o al titular del derecho en comunidad..." Id.

La división de la cosa común puede tener lugar en cualquier momento, a petición de cualquiera de los comuneros, ya que ninguno de éstos está obligado a permanecer en la comunidad. Artículo 334 del Código Civil, 31 L.P.R.A. sec. 1279. Nuestro ordenamiento expresamente dispone que en la división se seguirán las normas concernientes a la división de la herencia. Artículo 340 del Código Civil, 31 L.P.R.A. sec. 1285.

En lo que nos atañe, el artículo 328 de nuestro Código Civil, 31 L.P.R.A. sec. 1273, equivalente al artículo 394 del Código Civil Español, dispone que: "Cada partícipe podrá servirse de las cosas comunes, siempre que disponga de ellas conforme a su destino y de manera que no

perjudique el interés de la comunidad, ni impida a los copartícipes utilizarlas según su derecho." Este artículo, nuevamente, se refiere al uso del bien común.

La facultad de usar la cosa común consiste "en un derecho de uso, con las diversas manifestaciones que el mismo puede envolver y que se extiende a toda la cosa." Vázquez Bote, supra, en la pág. 14. Ese derecho de uso está sujeto, según vimos, a restricciones básicas. En primer lugar, el uso que se da a la cosa tenida en común debe ser conforme a su destino. En segundo lugar, no debe perjudicar el interés de la comunidad y, en tercer lugar, el uso de la cosa común por un comunero no ha de impedir el uso por los copartícipes conforme a su derecho. Artículo 328 del Código Civil, supra. Precisamente, es esta última limitación la que comprende la prohibición del uso en beneficio exclusivo de uno de los copropietarios. Vázquez Bote, supra, en la pág. 15. Por eso hemos expresado, citando al tratadista J. Santos Briz, que "[u]sar las cosas de manera que perjudique al interés de la comunidad es, desde luego, que uno de los condóminos la posea toda ella excluyendo a los demás." Soto López v. Colón, 143 D.P.R. 282, 289 (1997).

La controversia que hoy examinamos fue objeto de estudio en De la Fuente v. Roig, 82 D.P.R. 514 (1961). En ese caso, uno de los comuneros construyó una vía en una finca dedicada al cultivo de caña que estaba sujeta al régimen de copropiedad y la utilizó, "no sólo para servir las necesidades de la finca común, sino también para

transportar anualmente miles de toneladas de caña procedentes de otras fincas y que iban destinadas a la central propiedad de la demandada." Id. en la pág. 534. Luego de atender otros problemas jurídicos relacionados con la construcción de la vía, que no son pertinentes al caso de autos, analizamos el uso de la finca para estos fines, que si bien correspondía al destino de ésta, puesto que se trataba de una finca dedicada al cultivo de la caña, tan sólo aprovechaba a uno de los comuneros, quien a su vez era dueño de la central a la cual se transportaba la caña. En la Opinión emitida por el entonces Juez Asociado señor Serrano Geyls, manifestamos lo siguiente respecto al alcance del artículo 328:

> No hay duda que **la demandada estaba impedida**, por razón del art. 328 del Código Civil, **de utilizar la cosa común (...) para su particular y exclusivo beneficio y sin pagar una adecuada compensación a la comunidad.** Como explica el Tribunal Supremo de España, el condominio "consiste en el libre goce de [la cosa común] y de sus productos por todos los partícipes por igual o en proporción de sus respectivas participaciones, sin más limitaciones que las necesarias para lograrlo del modo mejor y más equitativo, y...**excluye el disfrute exclusivo de la cosa común y de cualquier parte de ella en beneficio singular de uno de los condueños.**" Sentencia de 22 de junio de 1892, 71 Jurisprudencia Civil 805, 811-812. Id. (Énfasis suplido).

En síntesis, resolvimos mediante la Opinión citada que un comunero no puede usar o disfrutar de manera exclusiva de un bien comunitario sin pagar a los demás comuneros por dicho beneficio privativo. Concluimos que "[é]ste es, sin

duda, uno de los principios rectores de un régimen pacífico y justo de la comunidad." Id.

Más recientemente, al referirnos a la comunidad de bienes post divorcio en Soto López v. Colón, supra en la pág. 289, expresamos que "[d]urante la existencia de la comunidad de bienes ninguno de los ex cónyuges puede tener el monopolio de ella." En esa ocasión resolvimos que si sólo uno de los cónyuges mantenía el control y uso de los bienes de la comunidad, el otro cónyuge "tiene un derecho superior, como comunero, entre otras cosas, a que su ex cónyuge le pague una suma líquida específica periódica." Id. en las págs. 291-292. Aunque hizo referencia a este caso, el Tribunal de Apelaciones concluyó que la Señora Díaz no fue privada "de su participación en el bien común" por cuya razón no procedía otorgarle un crédito adicional.

El Tribunal Supremo español ha interpretado de manera similar el artículo 394 de su Código Civil, equivalente al artículo 328 del nuestro. Así, en la Sentencia de 2 de octubre de 1996, el Tribunal Supremo español concluyó que dicho artículo 394 "se orienta en el mismo sentido de no permitir el uso exclusivo de la cosa en común por uno de los partícipes, la solución contraria no sólo es ilegal, sino que choca con el sentido de la justicia." Véase Ignacio Sierra Gil de la Cuesta, *Comentarios del Código Civil*, Tomo II, en la pág. 249 (2002). De esta forma, se ha prohibido el monopolio del uso de la cosa común por uno o

varios titulares. Sentencia de 18 de febrero de 1987. Sierra Gil de la Cuesta, supra en la pág. 250.

### III.

La peticionaria plantea que dentro de la comunidad constituida entre ella y el recurrido, uno de los comuneros disfrutó del uso exclusivo de los bienes, beneficiándose injustamente. En su dictamen, el Tribunal de Apelaciones reconoce, que de acuerdo a Soto López, supra, el uso exclusivo del bien común por uno de los comuneros da lugar a un crédito a favor del comunero excluido. No obstante, concluye que la señora Díaz no fue privada de su participación en el bien común y que el señor Aguayo poseyó también a nombre de la señora Díaz. Apoya su criterio en nuestras expresiones en Cintrón Vélez v. Cintrón de Jesús, 120 D.P.R. 39 (1987). Erró en su apreciación del alcance de nuestra decisión en ese caso.

En Cintrón Vélez determinamos que unos nietos coherederos, quienes vivían con su abuelo y lo cuidaron en su enfermedad, no estaban obligados, al fallecer éste, a pagar renta a los otros coherederos por el tiempo durante el cual continuaron viviendo en la casa del causante. Concluimos que dicha situación no configuraba un enriquecimiento injusto porque, "aunque los nietos coherederos forman parte de la comunidad hereditaria y poseyeron la casa del causante después de su muerte, **esa fue la vivienda de ellos por varios años antes de la muerte**

**del testador, o sea, que tenían la posesión exclusiva de la casa desde antes.**" Id. en la pág. 50 (énfasis nuestro). Expusimos entonces que como todos los comuneros tienen derecho a coposeer los bienes comunitarios "...la tenencia real de alguna cosa común por un comunero solo, antes de ser considerada como posesión para él, debe de serlo como caso de ejercicio de la posesión de todos a través de él...".

Ahora bien, reconocimos de igual forma, que:

Todo ello, no obsta, sin embargo, a que cuando conste que el comunero poseedor, posee para sí, y no (...) como servidor de la posesión de los otros o mediador posesorio de los mismos, se le reconozca la posesión exclusiva a él de la cosa que sea (...) si bien a los otros, mientras estén en plazo, les quepa mediante interdicto o acción reivindictoria [sic], recobrar la parte de posesión a que tienen derecho. Id. en la pág. 51, citando de M. Albaladejo, *Derecho Civil*, Barcelona, Librería Bosch, 1979, T. V., Vol. I., pág. 273 (énfasis omitido).

Nos parece evidente que la decisión que utilizan tanto el tribunal apelativo intermedio como la parte recurrida para sustentar sus posiciones resuelve una situación fáctica particular, muy distinta a la del caso que hoy examinamos. Según explicamos antes, en Cintrón Vélez, supra, resolvimos que cuando un bien se convierte en bien común por razón del fallecimiento del causante, el coheredero que tenía la posesión del bien previo a ese hecho podía continuar poseyéndolo hasta el momento de la partición, sin que ello se conceptúe, *ipso facto*, en posesión exclusiva que genere la obligación de retribuir a

los demás comuneros. En ese caso pesó mucho en nuestro ánimo que si bien todos los coherederos estuvieron de acuerdo con que se vendiera la casa en pública subasta: "no por esto se les va a imponer [a los nietos] la obligación de pagarle una renta a su propio padre, por el tiempo en que vivieron en la casa de los abuelos, sin tener otro lugar donde vivir." Id. en la pág. 52. Según explicamos en nota al calce, al así resolver "[c]umplimos (...) con el mandato legal y a la vez hacemos justicia." Id., nota al calce 3.

En cambio, los hechos del presente caso nos requieren aplicar los preceptos que establecimos en De la Fuente, supra, a saber, que uno de los comuneros no puede usar la cosa común de manera exclusiva y en su propio beneficio, sin pagar la compensación correspondiente a los demás. De igual manera resolvimos en Soto López, supra. En De la Fuente, supra, la Opinión se refería al beneficio privado que derivaba un comunero al transportar caña hasta su finca privada, a través de una finca tenida en común. El principio que adoptamos en aquél entonces guía el rumbo de la controversia que estudiamos ahora, cuatro décadas después y que versa sobre una controversia más contemporánea; a saber, si un comunero debe compensar al otro por el uso exclusivo de bienes que adquirieron en común pro indiviso, una vez disuelta la relación de noviazgo que dio base a la adquisición. Resolvemos que la

norma adoptada en <u>De la Fuente</u> es igualmente aplicable a esta situación.[2]

También resolvemos que en circunstancias como la del caso que nos ocupa, el uso exclusivo del bien común por uno sólo de los comuneros sin resarcir al otro, es contrario a principios elementales de derecho, basados en la equidad, que no permiten el enriquecimiento injusto. Como sabemos y hemos recalcado muchas veces, la doctrina de enriquecimiento injusto es un principio general "que opera en todo el ámbito del derecho" y es "un corolario del concepto de equidad, lo cual equivale a decir que es un corolario del concepto de justicia mismo." <u>Silva v. Comisión Industrial</u>, 91 DPR 891, 898 (1965). Según Puig Brutau, "[d]e enriquecimiento injusto se habla propiamente cuando la ley no ha previsto una situación en la que se produce un desplazamiento patrimonial que no encuentra una explicación razonable en el ordenamiento vigente". J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Bosh, 1ra. ed., 1983, Tomo II, Volumen III, pág. 44; <u>Ortiz Andújar</u> v. <u>E.L.A.</u>, 122 D.P.R. 817 (1988). Al igual que otras acciones fundadas estrictamente en la equidad, la reclamación basada en enriquecimiento injusto sólo procederá cuando la ley no

---

[2] Al así resolver no descartamos la posibilidad de que uno de los comuneros pueda prestar su consentimiento, expresa o tácitamente, o llegar a un acuerdo para que el otro comunero utilice gratuitamente la cosa común para su exclusivo beneficio. En esas circunstancias, distintas al caso que hoy es objeto de nuestro examen, no surgiría, naturalmente, la obligación de compensar a la otra parte por habérsele privado del uso del bien común.

provea otra causa de acción y cuando la parte que reclame el remedio acuda al tribunal "con las manos limpias". Ortiz Andujar v. ELA, supra, a la pág. 823, y otros casos allí citados. Según reconoce nuestra jurisprudencia, los siguientes elementos deben concurrir para la adecuada aplicación de la doctrina de enriquecimiento injusto: un enriquecimiento y un empobrecimiento correlativo; la conexión entre ambos; la ausencia de causa que justifique el enriquecimiento y la inexistencia de un precepto legal que excluya la aplicación del enriquecimiento sin causa a la situación particular examinada. Ortiz Andújar v. E.L.A., supra; Morales v. Municipio de Toa Baja, 119 D.P.R. 682 (1987); Plan de Bienestar de Salud v. Alcalde Cabo Rojo, 114 D.P.R. 697 (1983).

El recurrido alega que la señora Díaz nunca mostró interés en vivir en la casa ni por retener los bienes muebles adquiridos en común. Por su parte, la señora Díaz expuso en su demanda que intentó recuperar los bienes muebles en varias ocasiones y que también hizo acercamientos para liquidar la comunidad, aunque resultaron infructuosos. Finalmente, dos años después de la ruptura de la relación interpuso acción para dividir la comunidad de bienes. Contrario a lo que resuelve el foro apelativo intermedio, entendemos que no era necesario que ella presentara una solicitud de interdicto para avalar su derecho a un crédito sobre el uso de la residencia. La señora Díaz tenía a su disposición la vía ordinaria, la

cual utilizó dentro de un término razonable. Por tanto, no coincidimos con la parte recurrida, quien alega que ella consintió a ese uso y que no fue diligente al no interponer una demanda de interdicto para impedirlo. En vez, concluimos que el señor Aguayo poseyó los bienes comunales y los utilizó para su beneficio exclusivo, sin el consentimiento de la señora Díaz, procediendo en estas circunstancias la compensación correspondiente.

Acorde a lo anterior, debemos revisar los cálculos que efectuó el Tribunal de Primera Instancia y que fueron confirmados por el Tribunal de Apelaciones. Para ello, es menester tener presente que ambos comuneros poseen una participación del cincuenta por ciento (50%) de los bienes, según ellos mismos reconocen. Comencemos analizando la controversia sobre el uso exclusivo de la propiedad inmueble.

A primera vista, no podemos concluir que el señor Aguayo tuvo el uso exclusivo del inmueble desde diciembre de 1998 hasta noviembre de 1999, aunque durante ese tiempo hizo los pagos mensuales del préstamo hipotecario, puesto que ni él ni la señora Díaz ocuparon la vivienda durante ese período. Por tanto, se equivoca la peticionaria al solicitar un crédito por esos once meses. El pago de la hipoteca es una de las cargas que corresponde distribuir entre los partícipes de la comunidad, de acuerdo a sus respectivas cuotas. Artículo 327 Código Civil, 31 L.P.R.A. sec. 1272. Habiéndolo asumido el señor Aguayo durante ese término, la señora Díaz le debe a éste la mitad de lo que

él desembolsó por ese concepto, es decir, $3,305.00, más el interés legal devengado durante todo el tiempo en que esa deuda ha existido.

El crédito por privación de uso del inmueble a favor de la señora Díaz comienza desde diciembre de 1999, cuando el recurrido se mudó a la residencia luego de casarse. Desde entonces, el señor Aguayo usó el bien exclusivamente para su disfrute y el de su cónyuge, a exclusión de su ex novia, la señora Díaz. El uso de un bien es parte de los beneficios que corresponden a los comuneros y, al igual que las cargas, debe guardar proporción con su participación en la comunidad. El uso del bien por uno de los comuneros no puede privar al otro de usarlo también, de acuerdo a su participación. Artículo 327 Código Civil, 31 L.P.R.A. sec. 1272. Siendo ello así, permitir que el señor Aguayo reciba un crédito por la mitad de los pagos de la hipoteca, cuando utilizó el bien para su beneficio exclusivo, a todas luces presenta una situación de enriquecimiento injusto.

En su petición de certiorari, la señora Díaz expone que el crédito que le corresponde por el uso exclusivo que el señor Aguayo dio a la cosa común debe ser equivalente a la porción del pago hipotecario que en otras circunstancias le hubiese correspondido a ella, es decir, la mitad de lo que el señor Aguayo pagó. Aduce que de esa manera se extinguió su deuda para con el señor Aguayo por ese concepto. Aquilatada la prueba, el Tribunal de Primera Instancia determinó, según expusimos, que el señor Aguayo disfrutó del bien común desde diciembre de 1999 hasta

agosto de 2003. No estamos en posición de adjudicar el valor del uso exclusivo del inmueble. Resolvemos que corresponde al Tribunal de Primera Instancia evaluar la compensación que debe recibir la señora Díaz por habérsele privado del uso del bien común, para lo cual deberá aportar prueba sobre el valor de dicho uso en el mercado. En el caso de autos, donde el bien inmueble comunitario se utiliza como residencia, el valor de uso en el mercado ha de calcularse tomando como base el canon de arrendamiento de una propiedad similar en la misma localidad para las fechas durante las cuales la señora Díaz fue privada de su uso. Al satisfacer esta deuda el señor Aguayo deberá pagar, además, los intereses legales correspondientes.

Pasemos ahora a evaluar la controversia sobre el uso exclusivo de los bienes muebles comunitarios. De las determinaciones de hecho de la sentencia recurrida no se desprende con cuánto contribuyó cada comunero a la compra de los bienes muebles, por lo que debemos presumir que los adquirieron por partes iguales. Artículo 327 del Código Civil, 31 L.P.R.A. sec. 1272. El foro de instancia determinó que el valor total de dichos bienes asciende a $5,297.80 y adjudicó a la señora Díaz la mitad de su valor, como crédito contra la participación del señor Aguayo, puesto que éste habrá de quedarse con los bienes muebles tras la liquidación de la comunidad.

No obstante, no podemos obviar que el señor Aguayo ha usado estos muebles exclusivamente desde que se mudó a la casa en diciembre de 1999 hasta el presente. En

consideración a ello, la señora Díaz solicita que adjudiquemos a su favor una suma equivalente a la mitad del valor de estos bienes por razón de dicho uso exclusivo. No explica ni surge de autos cómo llega a este valor. Acceder a lo solicitado conllevaría adjudicar a favor de la señora Díaz la totalidad del valor de los bienes muebles que fueron adquiridos en común. Sin embargo, no tenemos base para determinar que la compensación por el uso exclusivo de los bienes muebles equivale a la mitad de su valor, puesto que no consta en autos prueba alguna al respecto. Resolvemos, al igual que lo hicimos respecto al valor del uso del bien inmueble comunitario, devolver el caso al Tribunal de Primera Instancia, para que reciba prueba y determine a cuánto asciende el crédito al que tiene derecho la Señora Díaz por el uso exclusivo de los bienes muebles que disfrutó el señor Aguayo, desde que se mudó a la residencia hasta agosto de 2003. A esta suma se le deberá imponer al señor Aguayo, de igual forma, el pago de intereses.

En conclusión, la participación del señor Aguayo en la comunidad consiste del crédito de $3,305.00 más los intereses sobre esa cantidad, que hemos resuelto le corresponde por la mitad de los pagos hipotecarios que realizó mientras ninguno de los comuneros ocupaba la propiedad. Además, el señor Aguayo tiene a su favor, según determinó el foro de instancia, la mitad del valor neto ("equity") de la propiedad, es decir, $17,397.79. Entre sus débitos se encuentra la cantidad de $2,648.90 por la mitad

del valor  los bienes muebles, y la compensación por el uso exclusivo del bien inmueble y de los bienes muebles. Por su parte, la señora Díaz es acreedora a $17,397.79 en concepto del valor neto ("equity") de la propiedad,  más la suma de $2,648.90 que el foro de instancia determinó le correspondía por su participación en los bienes muebles y un crédito por el uso exclusivo del bien inmueble y los bienes muebles de los cuales fue privada, menos  la diferencia de $3,305.00 que adeuda al señor Aguayo por los pagos hipotecarios que no realizó.

Por los fundamentos que anteceden, expedimos el auto de certiorari para modificar la decisión recurrida y determinar que la participación de ambos comuneros en la división de la comunidad, está sujeta a la determinación del foro de instancia respecto al valor del uso exclusivo del bien inmueble y de los bienes muebles que disfrutó el señor Aguayo desde diciembre de 1999 hasta agosto de 2003 y a la suma de los intereses acumulados sobre la mitad de la hipoteca que la peticionaria no satisfizo.

Se devuelve el caso al foro de instancia para esos fines. Mantenemos inalterada la disposición del foro de instancia respecto a la orden de efectuar la escritura de traspaso de la propiedad.

Se dictará sentencia de conformidad sin particular imposición de costas ni gastos.

Liana Fiol Matta
Jueza Asociada

EL TRIBUNAL SUPREMO DE PUERTO RICO

Lilliam Díaz Lizardi

    Peticionaria

                                 Certiorari

      v.

Juan José Aguayo Leal

    Recurrido                          CC-2004-154

SENTENCIA

En San Juan, Puerto Rico, a 8 de septiembre de 2004.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, modificamos las resoluciones emitidas por el entonces Tribunal de Circuito de Apelaciones y por el Tribunal de Primera Instancia y devolvemos el caso de autos al Tribunal de Primera Instancia para que continúen los procedimientos de forma compatible con lo aquí dispuesto.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton emitió voto de conformidad.

El Juez asociado señor Rivera Pérez concurrió sin opinión escrita.


                              Patricia Otón Olivieri
                              Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Lilliam Díaz Lizardi

    Peticionaria

    v.                                        CC-2004-154

Juan José Aguayo Leal

    Recurrido

Opinión de Conformidad emitida por el Juez Presidente señor Hernández Denton

San Juan, Puerto Rico, a 8 de septiembre de 2004

Estamos conforme con las determinaciones que hace la Opinión del Tribunal en cuanto a que el Sr. Juan José Aguayo Leal debe compensar a la Sra. Lilliam Díaz Lizardi por el período durante el que habitó junto a su esposa el inmueble en comunidad y utilizó los muebles propiedad común. De igual forma, concurrimos con que el señor Aguayo Leal, a su vez, tiene un crédito contra la señora Díaz Lizardi por los pagos de hipoteca del referido inmueble que realizó sin recibir de ésta la aportación correspondiente.

Empero, creemos prudente expresarnos de manera particular sobre cuándo el uso y disfrute por un condueño de la propiedad en comunidad

"impide" a los demás dueños utilizar la misma de manera que surja una obligación de compensar. Asimismo, debemos hacer constar porqué estamos de acuerdo con la forma en que la Opinión del Tribunal avalúa y adjudica los créditos y deudas correspondientes a cada parte por concepto de pago de hipoteca y resarcimiento por privación de uso y disfrute de los bienes comunes. Veamos.

I

A

En cuanto a la conclusión de que el señor Aguayo Leal "impidió" a la señora Díaz Lizardi el uso y disfrute del inmueble y de los muebles en comunidad y, por lo tanto, tiene que compensarla por ello, es importante aclarar que no todo uso y disfrute de la cosa común por uno de los comuneros, sin la concurrencia de los demás, implica de por sí una infracción al Art. 328 del Código Civil,[3] de la cual surja un deber de compensar.

Dicho artículo dispone el disfrute de cada partícipe de los bienes en comunidad siempre que, entre otras cosas, no se "impida a los copartícipes utilizarlas según su derecho". *Id*. En casos como el de autos, en el que uno de los condueños se muda al inmueble en comunidad o utiliza los muebles en común sin el consentimiento de los demás dueños y sin que éstos hagan igual uso simultáneo, no siempre surge una obligación de compensar por dicho uso y disfrute. Sólo el uso y disfrute de la cosa común por uno de los copartícipes que "impida" a los demás ejercer igual

derecho constituye un menoscabo a los intereses de los otros dueños, por lo cual se reconoce una obligación de pagar por dicho uso exclusivo y particular. Es decir, el mero hecho de ocupar y disfrutar los bienes en comunidad de manera individual no siempre será suficiente para que se concluya que ello tuvo el efecto de "impedir" que los demás copartícipes la utilicen.

Al respecto, al referirse al Art. 394 del Código Civil español equivalente al Art. 328 nuestro, Scaevola nos señala que:

> [E]l artículo presupone la circunstancia de que todos los partícipes se sirvan de la cosa común, pues su objeto es armonizar y coordinar el uso de ella por varias personas. ¿Podrá utilizarla uno solo? No vemos razón en contra, siempre que observe las condiciones del artículo, porque si se aparta de ellas puede lesionar los derechos de los demás copartícipes. En efecto, todos los condueños tienen, según el artículo objeto de examen, derecho para servirse de la cosa común; luego si algún otro quiere servirse de ella no puede oponerse el que estuviese usándola, porque uno de los requisitos del artículo es no privar a los otros copartícipes de utilizarl[a] según su derecho. Q.M. Scaevola, Código Civil, Madrid, Ed. Reus, 1943, T. VII, pág. 315; *además*, M. Albaladejo, *Comentarios al Código Civil y Compilaciones Forales*, Madrid, Ed. Rev. Der. Privado, 1985, T. V, Vol. 2, pág. 73.

Es decir, el mero hecho del uso exclusivo por uno de los comuneros no es determinante al resolver si éste "impidió" a los demás copartícipes el ejercicio de igual derecho. En la situación hipotética de que el señor Aguayo Leal se hubiese mudado a residir sólo al inmueble, éste no hubiese necesariamente infringido el Art. 328 del Código

---

[3] 31 L.P.R.A. sec. 1273.

Civil, *supra*, porque estaría legítimamente haciendo efectivo su derecho de disfrutar la cosa común conforme a su destino, sin perjudicar los intereses de la comunidad y sin impedir que la señora Díaz Lizardi haga lo propio. La circunstancia agravante en este caso, sin embargo, es que el señor Aguayo Leal trajo a un tercero a participar del uso y disfrute del inmueble y de los muebles en comunidad y ello, por demás, impidió que la otra condueña se sirviera de los mismos conforme a su derecho. Máxime cuando ese tercero se trata del cónyuge del señor Aguayo Leal. Es precisamente por esta particularidad que reconocemos que a la luz de los hechos aquí planteados, la señora Díaz Lizardi fue privada del uso y disfrute de su participación en la comunidad de bienes debido a la naturaleza del uso que le dio a la misma el señor Aguayo Leal.

Estos hechos demuestran la intención del señor Aguayo Leal de utilizar los bienes en comunidad con exclusión del derecho equivalente de la señora Díaz Lizardi. Por lo tanto, conforme a nuestra jurisprudencia ciertamente procede reconocerle a Díaz Lizardi un crédito por el período en que el señor Aguayo Lizardi ocupó la propiedad inmueble con su esposa y retuvo los bienes muebles propiedad de ambos.

B

Ahora bien, ¿a cuánto debe ascender dicho crédito? La señora Díaz Lizardi alega que el señor Aguayo leal le debe

una cantidad igual al cincuenta por ciento (50%) de los pagos de hipoteca que él realizó sin aportación alguna de su parte. De esa manera, se sugiere que la deuda de la señora Díaz Lizardi con el señor Aguayo Leal por el pago de la hipoteca y la de éste con ella, por el uso exclusivo del inmueble, se cancelen por compensación. La norma, según propuesta, parece ser que cuando un comunero pague las deudas hipotecarias de los bienes en comunidad, y simultáneamente además impida a otros condueños usar y disfrutar de los bienes en comunidad, nada tendría que pagar porque las reclamaciones por daños y reembolso por el pago de las cargas se compensarían. Sin embargo, esta norma, además de carecer de fundamento jurídico, no es consistente con la jurisprudencia de este Tribunal.

Sobre la cuantía de los daños que debe compensar el comunero que utiliza los bienes comunes para su uso particular y exclusivo, en De la Fuente v. Roig, 82 D.P.R. 514 (1961), reconocimos la necesidad de que el comunero perjudicado ofrezca datos al tribunal que ayuden a fijar la compensación de tales daños. A la pág. 534. En ese caso se trataba del uso por uno de los comuneros para su beneficio particular de una vía ferroviaria ubicada en la finca en comunidad. A pesar de que concluimos que éste debía abonar los daños causados a los otros condueños por limitarlos en el uso y disfrute de la finca, resolvimos que no nos habían puesto en posición de cuantificar dicha indemnización. Expresamos con relación a esto que:

> No tenemos datos de clase alguna que nos permitan hacer un cómputo de la suma que por ese servicio debió recibir la comunidad, tomando en cuenta, por ejemplo, la distancia recorrida y lo que se acostumbra cobrar en tales casos. Actuaríamos necesariamente sobre bases especulativas y arbitrarias si fijáramos la compensación sin evaluar esos elementos. *Id.*, a la pág. 535.

Es decir, la determinación del crédito del comunero perjudicado en el uso y disfrute de su participación en la comunidad de bienes requiere la consideración de variables específicas. Es una cuantía que no debe depender de criterios arbitrarios o especulativos.

Cónsono con lo anterior, en <u>Montalván Ruiz v. Rodríguez Navarro</u>, res. el 23 de marzo de 2004, resolvimos que el comunero que retenía las ganancias de un negocio en comunidad debía abonar al otro comunero no sólo su participación en las mismas, sino además, el pago de intereses al por ciento prevaleciente en el mercado para las fechas pertinentes. Ello en consideración a que el comunero que es privado del uso y disfrute de su propiedad tiene derecho a ser resarcido por el que lo perjudicó conforme a criterios independientes, consistentes y determinados. De esa manera, además, se hace justicia al que tiene que abonar el pago pues está protegido contra decisiones arbitrarias.

**Conforme a lo anterior, y según lo reconoce la Opinión del Tribunal, la norma en el caso de autos debe ser a los efectos de reconocerle a la señora Díaz Lizardi <u>un crédito por el 50% del valor de la renta en el mercado</u> tanto del inmueble como de los muebles que el señor Aguayo Leal usó y**

**disfrutó de manera exclusiva.** Dicho crédito no tiene que responder necesariamente al 50% de los pagos de hipoteca que Díaz Lizardi le adeuda a Aguayo Leal.

Esta norma busca atender otros casos de igual naturaleza al presente. Habrá instancias en que el pago de hipoteca no sea proporcional al importe que debe recibir un comunero por haber sido excluido del uso y disfrute de la cosa en común. Podría ocurrir, asimismo, que el comunero que impidió que los demás se sirvieran de los bienes en comunidad no haya aportado a las cargas de los mismos en exceso de lo debido, ya porque abonó exactamente lo que le correspondía según su participación o porque los bienes no tenían cargas corrientes. Por ello, el valor en el mercado de los bienes cuyo uso acapara un comunero con exclusión de los demás condueños es un criterio valorativo uniforme que puede extenderse a otros escenarios similares.

II

A la luz de lo anterior, estamos conforme con la Opinión del Tribunal y con la determinación de devolver el caso al Tribunal de Primera Instancia para que se especifique la cuantía que el señor Aguayo Leal le debe a la señora Díaz Lizardi por concepto del uso y disfrute exclusivo de la propiedad mueble e inmueble en comunidad a razón del valor en el mercado de dicho uso y disfrute.


FEDERICO HERNÁNDEZ DENTON
Juez Presidente