Opinión disidente emitida por el
Juez Asociado Señor Rivera Pérez.
Sin mayores contenciones, este recurso nos plantea sen-cillamente una acción de división de comunidad de bienes. Mediante la sentencia que certifica la Mayoría, y contravi-niendo los principios aplicables a la liquidación de una co-munidad de bienes, resuelve que corresponde en primer lugar dividir de inmediato la cosa común, adjudicando a cada comunero su haber, y posteriormente, tomar en con-sideración los activos y pasivos existentes, como el cobro de créditos. Además, aprovechamos la coyuntura de este caso para expresar nuestra postura en relación a la naturaleza jurídica de la sucesión a favor del Estado. Por discrepar de los pronunciamientos de la Mayoría, respetuosamente disentimos.
*164 I
En 1999, la Sra. Ana Margarita Cintrón Pou y la Sra. María P. Estrella Peña adquirieron en comunidad una pro-piedad ubicada en la urbanización Constancia de Ponce. La participación sobre el bien inmueble era del cincuenta por ciento cada una. El pago de la hipoteca que gravaba la propiedad fue asumida conjuntamente, con un balance original de $69,400.
En enero de 2001, la señora Estrella Peña falleció intes-tada y sin herederos. Así, mediante una sentencia emitida por el Tribunal de Primera Instancia, el 27 de enero de 2003 se declaró al Estado como único y universal heredero de la causante, señora Estrella Peña. El caudal hereditario de la señora Estrella Peña se componía de la propiedad poseída en común con la señora Cintrón Pou y una cuenta de banco, cuyo balance a la muerte de la causante era de $2,369.
El 22 de enero de 2003, la señora Cintrón Pou solicitó ante el Tribunal de Primera Instancia la división de la comunidad de bienes habida entre ella y el Estado respecto a la propiedad mencionada. Además, la demandante re-clamó un crédito por la cantidad de $25,403.21, correspon-dientes a los pagos realizados por ella para el pago del préstamo hipotecario contraído en comunidad, así como la cantidad de $476.26 por el pago de contribuciones sobre la propiedad.
El 27 de diciembre de 2004, la propiedad se vendió por la cantidad de $85,000. El producto de la venta, luego de saldado el préstamo hipotecario fue de $17,097.23. Dicha cantidad fue consignada en el tribunal, en lo que se diluci-daba la reclamación de la señora Cintrón Pou.
Atendida la solicitud de la señora Cintrón Pou, el Tribunal de Primera Instancia, a la luz del Art. 327 del Código Civil,(1) determinó que tanto la señora Cintrón Pou como el *165 Estado estaban obligados a asumir por partes iguales la obligación hipotecaria que gravaba el inmueble vendido, así como los pagos por las contribuciones al CRIM. Ha-biendo la señora Cintrón Pou efectuado la totalidad de los pagos, ascendente a $25,879.47, dicho foro determinó que surgía a su favor un crédito de $12,939.73.
Este crédito fue descontado de la cantidad de $17,097.23 consignada en el tribunal, y el sobrante de $4,157.50 fue, a su vez, dividido entre los comuneros para adjudicar la cantidad de $2,078.75 a la señora Cintrón Pou y $2,078.75 al Estado, como sucesor de la señora Estrella Peña. De este modo, el foro primario le otorgó a la señora Cintrón Pou la cantidad de $15,018.48 y la cantidad de $2,078.75 al Estado.
En lo que respecta a la cuenta bancaria, el tribunal re-solvió que ésta no formaba parte de la comunidad de bie-nes que existió entre la causante y la señora Cintrón Pou, por lo cual determinó que esas sumas le correspondían al Estado en calidad de único y universal heredero de la se-ñora Estrella Peña.
Inconforme con esa determinación, la señora Cintrón Pou acudió ante el Tribunal de Apelaciones, el cual con-firmó la sentencia recurrida.
En el recurso ante nos, la señora Cintrón Pou aduce que, antes de descontar el crédito correspondiente al pago de la hipoteca, crédito sobre el cual no existe controversia, el foro primario debió adjudicarle la mitad del sobrante de la venta de la propiedad que poseían en comunidad —es decir, $8,548.61— y posteriormente, además de dicha can-tidad, el correspondiente crédito de $12,939.73, prove-niente de los pagos de la hipoteca. De este modo, reclamó que el total que se le debía adjudicar era de $21,488.34. Toda vez que dicha cantidad excedía lo obtenido como so-brante en la venta de la propiedad que tenían en común, la señora Cintrón Pou señaló que era acreedora de todos los *166 activos del caudal relicto(2) de la señora Estrella Peña, es decir, $19,466.23.
Finalmente, es la postura de la señora Cintrón Pou que, en vista de que aún se le adeudaba la cantidad de $2,022.11, el Estado debe responder por el pago de la refe-rida suma de dinero. En la alternativa, adujo que de en-tenderse que el Estado hereda a beneficio de inventario, su reclamo se extendería únicamente hasta donde alcancen los bienes del caudal relicto de la causante.
II
La Mayoría parte de la premisa de que los foros inferio-res erraron al descontar el crédito de la aquí peticionaria señora Cintrón Pou, de la totalidad del producto sobrante de la venta del inmueble, para luego adjudicar las cantida-des correspondientes a las cuotas de cada comunera. Es decir, que el crédito por los pagos de la hipoteca en exceso, realizados por la señora Cintrón Pou, debe ser descontado del caudal hereditario de la causante y no del producto de la venta del bien inmueble en común.
Disentimos por dos razones. En primer lugar, entende-mos que la operación matemática que hoy avala la Mayoría adolece del error de mezclar dos operaciones particionales, la partición de una comunidad de bienes y la partición de una comunidad hereditaria. Es decir, la división del bien comunitario y la adjudicación de una de esas mitades in-mediatamente al caudal de la causante, es anticipada ya que se realiza sin completar la liquidación de su relación como comunera con la señora Cintrón Pou. Es principio fundamental que el sobrante o el remanente es lo que debe formar parte del activo de la herencia, pues no se puede *167 entender liquidado un bien en comunidad con la mera división de éste. La liquidación de la comunidad de bienes habida entre ambas es independiente a la división de la herencia de la causante. Por esta razón entendemos que fue correcto liquidar la comunidad, en la cual participaba la sucesión, antes de adjudicar lo correspondiente al Es-tado como heredero único y universal.
III
En nuestra jurisdicción, la comunidad de bienes está reglamentada por los contratos que las crean, las disposi-ciones especiales aplicables y, a falta de éstos, por lo dis-puesto en los Arts. 326-340 del Código Civil.(3)
Conforme a estos postulados existe una comunidad de bienes cuando la propiedad de una cosa o de un derecho pertenece de modo pro indiviso a varias personas.(4) Es decir, se trata de una situación en que dos o más personas son titulares de un mismo derecho, o cuando un derecho o conjunto de derechos están atribuidos a una pluralidad de sujetos, correspondiéndoles en común.(5) El tipo de comu-nidad que regula nuestro ordenamiento es la llamada condominium iuris romani, en la que cada comunero es dueño de una cuota ideal o alícuota de la cosa.(6)
Según el Art. 327 de nuestro Código Civil, la participa-ción de los comuneros en la administración de la cosa te-nida en común, así como su parte en el activo y pasivo, será proporcional a sus respectivas cuotas. Se presume que dichas cuotas son iguales mientras no se pruebe lo contrario.(7) El artículo establece la correlación entre los *168 beneficios y las cargas en la cuota de la propiedad.(8) Como parte de lo que constituyen los beneficios, se entiende que cada comunero tiene el derecho al uso y a los frutos del bien comunitario en proporción a su cuota.(9)
Las cargas son aquellas que recaen sobre la propiedad en general, como pueden ser los gastos de conservación, de administración, los impuestos y, en general, todo lo que se derive del funcionamiento de la propiedad del objeto o derecho. (10) Los beneficios y las cargas surgen según el de-recho de propiedad de cada uno de los copropietarios sobre la cosa común.
En lo que respecta al uso del bien común, nuestro Có-digo Civil dispone: “[c]ada partícipe podrá servirse de las cosas comunes, siempre que disponga de ellas conforme a su destino y de manera que no perjudique el interés de la comunidad, ni impida a los copartícipes utilizarlas según su derecho.’(11) Ello así, pues mientras subsista la comuni-dad, ninguno de los comuneros puede hacer gestión alguna que perjudique los intereses de aquéllos.(12)
Los comuneros deben proteger de buena fe el bien co-mún, máxime cuando dicho bien se encuentra de facto, bajo el control y la administración exclusiva de uno de ellos. Así lo exige la naturaleza de la relación de una comunidad en liquidación, pues llegado el momento de la división, habrá que entregar lo que, por derecho, corresponda a cada comunero.(13)
Respetando tales postulados es que cada uno de los co-propietarios tiene el derecho de realizar los actos de con- *169 servación de la cosa.(14) Esta distinción es esencial, toda vez que, según dispuesto en nuestro Código Civil, cual-quier conumero tiene el derecho a obligar a los demás a contribuir a los gastos de conservación de la cosa o derecho común y sólo podrá eximirse de esta obligación el que re-nuncie a la parte que le pertenece en su dominio.(15) Tal facultad, concedida al comunero que anticipa el pago de las expensas necesarias para preservar el haber común, tiene necesariamente que medirse en proporción con sus respec-tivas cuotas.
Ahora bien, ¿qué constituye un gasto de conservación? El concepto “gastos de conservación” es susceptible de va-rios matices y grados. Es preciso circunscribirlo y conside-rar aquellos gastos necesarios e indispensables para la conservación de la cosa en buen estado y en forma idónea de forma tal que sirva para su destino.(16) Esencialmente son actos dirigidos a mantener la utilidad y productividad de la cosa común y procurar que ésta permanezca al servi-cio del destino al que está afectada.(17) Del mismo modo, “actos de conservación” implica efectuar gestiones necesa-rias para que la cosa en común no se deteriore ni perezca.(18) A modo de ejemplo podemos mencionar, entre otros, los gastos por reparación de los daños causados por fuerza mayor o por terceros a la propiedad, los gastos para prevenir un daño inminente o predecible, los daños produ-cidos por causas que existían con anterioridad en la propie-dad y los gastos por reconstrucción de la cosa. Por el con-trario, no pueden considerarse incluidos en el concepto de gastos necesarios de conservación los realizados para au-mentar el disfrute o rendimiento de la cosa común.(19)
*170 En cuanto a la división de la cosa común, ésta puede tener lugar en cualquier momento, a petición de cualquiera de los comuneros, ya que ninguno de éstos está obligado a permanecer en la comunidad. (20) Por disposición expresa contenida en nuestro Código Civil, las relaciones jurídicas entre los copropietarios se liquidarán mediante la técnica jurídica de la partición hereditaria.(21) Es decir, para las operaciones de liquidación de la comunidad de bienes, se recurre supletoriamente a las disposiciones concernientes a la división de la comunidad hereditaria.(22)
La partición no será otra cosa que la separación, divi-sión y repartición de los bienes y derechos que componen la comunidad de bienes una vez liquidada. El contenido o el objeto de la partición exige reconocer los bienes, los dere-chos y las obligaciones, es decir, los activos y los pasivos. Ésta cumple una doble finalidad; de una parte, liquidar el caudal comunitario, rebajando de su importe las deudas y las cargas, y de otra parte, hacer cesar la indivisión.(23) Tanto la liquidación de la comunidad de bienes como la liquidación de una comunidad hereditaria, comprenden to-das las operaciones necesarias para determinar la existen-cia e identificación de los bienes que componen el haber común, para luego proceder a su división. De ordinario, dicho trámite requiere que se realice un inventario de to-dos los activos (bienes y derechos) y pasivos (obligaciones y cargas) y el avalúo de éstos.(24)
*171 A esta cantidad o valor final, a ser dividido, se llega después de deducir y adjudicar los créditos correspondien-tes a cada uno.(25) Sólo así, una vez pagadas las deudas, cargas y obligaciones de la comunidad de bienes, se proce-derá a la liquidación adjudicando el remanente a cada comunero.(26) Es decir, conforme al irrefutable principio “antes pagar que heredar”, una liquidación del caudal co-mún o del caudal hereditario exige que, previo a dividirse y adjudicarse su parte a sus correspondientes comuneros, se proceda al cobro de créditos, el pago de deudas y, una vez efectuado y determinado el saldo partible, se proceda a la división y adjudicación de los bienes del haber sobrante entre los partícipes. (27) Esta adjudicación final se realiza en función de sus respectivas participaciones.
Acorde con lo anterior, nos corresponde determinar si los cálculos que efectúo el Tribunal de Primera Instancia y que fueron confirmados por el Tribunal de Apelaciones son correctos.
No existe controversia en que, ante el fallecimiento de la señora Estrella Peña ab intestato y sin herederos, el Es-tado, como heredero único y universal, se convirtió en pro-pietario de la participación del 50% sobre la propiedad que la causante poseía en común pro indiviso con la señora Cintrón Pou. A su vez, la señora Cintrón Pou continuó pa-gando la hipoteca que gravaba el inmueble, así como el pago de contribución sobre la propiedad inmueble. Los pa-gos efectuados totalizaron la cantidad de $25,879.47. Las sentencias de los foros recurridos determinaron que siendo la participación sobre el bien inmueble de cincuenta por-ciento para ambas partes, la mitad de esos pagos le corres-pondía a la señora Cintrón Pou y la otra mitad al Estado. De este modo quedó establecido su derecho a reclamar el crédito correspondiente.
*172 En el escrito ante nos, la señora Cintrón Pou planteó que el tribunal debió, antes de descontarle el crédito ascen-dente a la mitad de lo pagado por ella, dividir el producto de la venta del bien común, adjudicándosele a ambas par-tes el cincuenta por ciento. Entendemos que el error seña-lado no se cometió.
Como hemos discutido, la liquidación del bien común conlleva el cobro de créditos, el pago de deudas y, posterior-mente, la división y adjudicación de los bienes del haber sobrante entre los partícipes. Por ende, el foro recurrido, conforme a derecho, procedió a saldar el préstamo hipote-cario que gravaba el bien inmueble, descontó el crédito de la causante y el sobrante se dividió y adjudicó entre el Es-tado y la señora Cintrón Pou. Ello se efectuó conforme a su participación en el bien inmueble, es decir, por mitad.
Es preciso señalar que nuestro análisis en ningún mo-mento omite determinar, en primer lugar, la cantidad que representa la cuota de cada comunero. No obstante, en este caso, el crédito por la hipoteca no es un derecho a repetir contra el caudal relicto. La hipoteca es un gravamen que recae sobre la totalidad del bien inmueble. Esto, a su vez, desde su constitución se convirtió en una de las obligacio-nes asumidas por cada una de las partes. Conforme a los principios aplicables a la liquidación de la comunidad de bienes, el dinero que produjo la venta del inmueble bas-taba para saldar el crédito reclamado por la señora Cin-trón Pou. Esa cantidad fue descontada de la parte corres-pondiente al Estado y adjudicada a ésta. Una vez pagado, no restaba crédito alguno pendiente que exigiese adjudi-carse como un pasivo de la herencia para ser pagado a la señora Cintrón Pou.
Por lo tanto, concluimos que la participación de la se-ñora Cintrón Pou en la comunidad no se extiende más allá del crédito por $12,939.73 mencionado y la mitad del so-brante de la venta de la propiedad poseída en común y pro indiviso con el Estado, es decir, $2,078.75. Por los funda- *173 mentos expuestos, entendemos que era procedente confir-mar las sentencias recurridas.
IV
Finalmente, nos resta aún expresar nuestro criterio so-bre la naturaleza jurídica de la sucesión del Estado y la limitación de su responsabilidad que declara la opinión mayoritaria.
Como indica el Art. 912 de nuestro Código Civil,(28) “[a] falta de personas que tengan derecho de heredar, heredará el Estado Libre Asociado de Puerto Rico, destinándose los bienes al Fondo de la Universidad”. (Enfasis suplido.) Sub-siguientemente, nuestro Código Civil establece que, para que el Estado pueda apoderarse de los bienes hereditarios, es necesario que preceda una declaración judicial de here-dero a su favor, adjudicándole los bienes vacantes.(29)
Al amparo de lo dispuesto en el Art. 876 de nuestro Có-digo Civil, fue establecida una delación legal a favor del Estado, mediante el cual éste se considera un heredero de índole privatista.(30)
La Mayoría justificó la limitación de la responsabilidad del Estado y resolvió que éste tiene el deber de completar o compensar únicamente hasta donde alcancen los bienes re-cibidos, por heredar en beneficio de inventario. Entende-mos que tal conclusión establecida por fíat judicial, no con-sidera que nuestro Código Civil no establece que el Estado hereda en beneficio de inventario. Por considerar que la Mayoría incurre en un acto de legislación judicial, en *174 contravención al principio constitucional de separación de poderes disiento una vez más.
En este caso se le exige al Estado que, como cualquier heredero, cumpla con la obligación de satisfacer al comu-nero que pagó en exceso conforme a sus derechos. Sin embargo, cabe preguntarnos si además de sus obligaciones, se le reconoce al Estado la participación en los beneficios de la cosa común.
El Estado, como comunero, tenía también derecho al disfrute del bien inmueble en controversia en un 50%. Ob-viamente, ese uso y disfrute estará limitado a su condición de persona jurídica.
Es por ello que un aspecto a considerar al momento de la liquidación lo era el crédito a favor del Estado por el uso particular y exclusivo en beneficio de una persona natural. Ello como consecuencia lógica y justa, en ausencia de un pacto o una compensación, por el uso exclusivo del bien común.
Anteriormente, fundamentados en criterios de equidad, expresamos que el uso exclusivo del bien común por uno de los comuneros da lugar a un crédito a favor del comunero excluido.(31) Además, precisamos que no se trata de un “mero uso exclusivo”, sino que se trata de una privación sin la aportación correspondiente que a su vez impide a los demás dueños utilizarla.(32)
Por lo tanto, en el caso ante nuestra consideración, el Estado era acreedor de un crédito por los años que la se-ñora Cintrón Pou se benefició de manera exclusiva del uso de la propiedad. El Estado, precisamente por no haberla utilizado y, en ausencia de alguna aportación establecida, no se benefició del bien comunitario.
No podemos perder de perspectiva en nuestras decisio-nes que el Derecho no opera en lo abstracto y que tiene como propósito perseguir el bien para alcanzar la justicia. *175 Por ende, siendo un ejercicio lógico y racional, la división efectuada por los foros inferiores fue correcta en derecho y en justicia.

 31 L.P.R.A sec. 1272.

 17,097.23 sobrante al saldo de la hipoteca + 2,369.00 cantidad de la cuenta bancaria 19,466.23

 31 L.P.R.A. secs. 1271-1285.

 Art. 326 del Código Civil, 31 L.P.R.A. sec. 1271.

 Residentes Sagrado Corazón v. Arsuaga, 160 D.P.R. 289 (2003).

 Díaz v. Aguayo, 162 D.P.R. 801, 808 (2004).

 31 L.P.R.A. sec. 1272.

 I. Sierra Gil de la Cuesta, Comentario del Código Civil, Barcelona, Ed. Bosch, 2000, T. III, pág. 247.

 Íd.

 Íd.

 Art. 328 del Código Civil, 31 L.P.R.A. sec. 1273.

 J. Beltrán de Heredia y Castaño, La comunidad de bienes en el derecho español, Madrid, Ed. Rev. Der. Privado, 1954, pág. 234.

 González v. Quintana, 145 D.P.R. 463, 473 (1998).

 Beltrán de Heredia y Castaño, op. cit., pág. 245.

 Art. 329 del Código Civil, 31 L.P.R.A. sec. 1274.

 Residentes Sagrado Corazón v. Arsuaga, supra.

 Íd.

 Íd.

 Véase Beltrán de Heredia y Castaño, op.cit., págs. 247-253.

 Art. 334 del Código Civil, 31 L.P.R.A. sec. 1279.

 Art. 340 de nuestro Código Civil, 31 L.P.R.A. sec. 1285 (reglas aplicables a la división de la comunidad de bienes):
“Serán aplicables a la división entre los partícipes en la comunidad, las reglas concernientes a la división de la herencia.” (Énfasis suplido.)

 Art. 340 del Código Civil, supra. Véase, además, Montalván v. Rodríguez, 161 D.P.R. 411 (2004).

 J. Cuevas Segarra y A. Román García, Derecho sucesorio comparado: Puerto Rico y España, San Juan, Pubs. JTS, 2003, pág. 395.

 Proceso para cual el Art. 1017 de nuestro Código Civil, 31 L.P.R.A. sec. 2883, dispone que se deducirán de la herencia.

 Montalván v. Rodríguez, supra.

 Íd.

 Cuevas Segarra, op. cit., pág. 418.

 31 L.P.R.A. sec. 2691.

 Art. 913 del Código Civil, 31 L.P.R.A. sec. 2692.

 El Art. 876 de nuestro Código Civil, dispone lo siguiente:
“A falta de herederos testamentarios, la ley defiere la herencia, según las reglas que se expresarán, a los parientes legítimos y naturales del difunto, al viudo o viuda, y al Estado Libre Asociado de Puerto Rico.” 31 L.P.R.A. see. 2592.

 Díaz v. Aguayo, supra.

 Íd.