EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ana Margarita Cintrón Pou<br><br>Demandada Peticionaria<br><br>v.<br><br>Estado Libre Asociado<br>de Puerto Rico<br><br>Demandado Recurrido | Certiorari<br><br>2008 TSPR 193<br><br>175 DPR _____ |

Número del Caso: CC-2006-664

Fecha: 19 de diciembre de 2008

Tribunal de Apelaciones:

      Región Judicial de Ponce: Panel X

Juez Ponente:

      Hon. Zaida Hernández Torres

Abogado de la Parte Peticionaria:

      Lcdo. Luis F. Pieraldi Cappa

Oficina del Procurador General:

      Lcda. Wanda I. Simons García
      Procuradora General Auxiliar

Materia: División de Comunidad y Reclamación de Créditos en Inmueble

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

INTEGRACIÓN DE SALA ESPECIAL

ORDEN

San Juan, Puerto Rico, a 19 de diciembre de 2008.

Debido a la no intervención de la Juez Asociada señora Rodríguez Rodríguez, se constituye una Sala Especial integrada por el Juez Presidente señor Hernández Denton, el Juez Asociado señor Rivera Pérez y la Juez Asociada señora Fiol Matta, para entender en el caso CC-2006-664, Ana Margarita Cintrón Pou v. Estado Libre Asociado de Puerto Rico.

Lo decretó y firma.

Federico Hernández Denton
Juez Presidente

CERTIFICO:

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ana Margarita Cintrón Pou

    Demandada Peticionaria

        v.                    CC-2006-664  Certiorari

Estado Libre Asociado
de Puerto Rico

    Demandado Recurrido

Sala Especial integrada por el Juez Presidente señor Hernández Denton, el Juez Asociado señor Rivera Pérez y la Juez Asociada señora Fiol Matta

SENTENCIA

San Juan, Puerto Rico a 19 de diciembre de 2008.

Nos corresponde resolver si erraron tanto el Tribunal de Apelaciones como el Tribunal de Primera Instancia al efectuar el cálculo de lo que le correspondía a la Sra. Ana Margarita Cintrón Pou por su participación en la comunidad de bienes que tenía constituida con el Estado Libre Asociado. Por entender que se cometió el error señalado, revocamos el dictamen recurrido.

Entendemos que –como cuestión de derecho– el crédito que le corresponde a la señora Cintrón Pou debe ser deducido de la cantidad del caudal hereditario correspondiente al E.L.A. y no del total del producto de la venta del inmueble que

las partes poseían en común pro indiviso. Además, resolvemos que el crédito de $2,022.12 que queda al descubierto a favor de la señora Cintrón Pou no debe ser pagado por el E.L.A., ya que entendemos que el Estado hereda a beneficio de inventario y sólo debe responder hasta donde alcancen los bienes del caudal.

I

La Sra. Ana Margarita Cintrón Pou adquirió un bien inmueble en común pro indiviso con la Sra. María Petronila Estrella. Al fallecer intestada la señora Estrella, y sin que le sobreviviera pariente alguno, el Estado Libre Asociado de Puerto Rico fue declarado heredero universal, por lo que advino heredero de la causante en la comunidad. No obstante, luego del fallecimiento de la señora Estrella, la señora Cintrón Pou continuó pagando las mensualidades de una hipoteca que gravaba el bien inmueble. Los referidos pagos ascendieron a $25,403.21. La señora Cintrón Pou también pagó la cantidad de $476.26 al CRIM, correspondiente a la contribución municipal sobre la propiedad inmueble.

Por acuerdo de las partes, la propiedad fue vendida por la suma de $85,000.00 y luego de saldar la hipoteca, quedó un sobrante y un remanente que totalizan $17,097.23, los cuales se consignaron en el tribunal. El otro bien que pertenecía al caudal hereditario era una cuenta de banco cuyo balance al momento de la muerte de la causante era de $2,369.00.

El tribunal de instancia determinó que la señora Cintrón Pou pagó, en concepto de hipoteca, la cantidad de $25,879.47. De igual forma, determinó que dicho pago era responsabilidad de la señora Cintrón Pou y del E.L.A., en partes iguales, por lo que Cintrón Pou tenía un crédito de $12,939.73. No obstante, al hacer su cálculo matemático para liquidar la comunidad, el foro primario descontó el crédito de la señora Cintrón Pou ($12,939.73) de la totalidad del sobrante de la venta del inmueble ($17,097.23). El producto de este cómputo ($4,157.75) fue dividido en partes iguales.

Como resultado de lo anterior, el tribunal de instancia concluyó que por su participación en la comunidad la señora Cintrón Pou tenía derecho a recibir $15,018.48 y al E.L.A. le correspondía la suma de $2,078.75. En cuanto a la cuenta bancaria, determinó que ésta no formaba parte de la comunidad de bienes, por lo que correspondía en su totalidad al Estado. El foro apelativo confirmó la sentencia emitida por el Tribunal de Primera Instancia.

Inconforme con dicha determinación, recurre ante nos la señora Cintrón Pou. En su comparecencia, alega que erró el Tribunal de Apelaciones al deducir su crédito del total del sobrante del producto de la venta del inmueble tenido en común pro indiviso, en lugar de dividir dicho sobrante en partes iguales (según la participación de cada comunero) y luego deducir el crédito de la señora Cintrón Pou de la

parte correspondiente al E.L.A. como heredero de la señora Estrella.

II

El Código Civil dispone que existe una comunidad de bienes cuando la propiedad de una cosa o de un derecho pertenece pro indiviso a varias personas. 31 L.P.R.A. sec. 1271. En cuanto al concurso de los participantes, el Código establece que tanto los beneficios como las cargas serán proporcionales a sus respectivas cuotas. Además, las porciones correspondientes a los comuneros se presumirán iguales, mientras no se pruebe lo contrario. 31 L.P.R.A. sec. 1272.

Por otra parte, todo comunero tendrá derecho a obligar a los demás participantes a contribuir a los gastos de conservación de la cosa o el derecho en común. 31 L.P.R.A. sec. 1274. No obstante, ningún copropietario está obligado a permanecer en la comunidad. Cada uno de ellos podrá pedir en cualquier momento que se divida la cosa común. 31 L.P.R.A. sec. 1279. Serán aplicables a la división de la comunidad las reglas relativas a la división de la herencia. 31 L.P.R.A. sec. 1285.

Conforme a las normas del Código Civil antes citadas, del sobrante de la venta del bien sujeto al régimen de la comunidad de bienes ($17,097.23), le corresponde a la señora Cintrón Pou un 50%. Es decir, de los $17,097.23, le corresponden $8,548.61, y los restantes $8,548.61 forman parte del caudal relicto de doña María Petronila Estrella.

Dicha cantidad, sumada a los $2,369.00 correspondientes a los fondos depositados en una cuenta bancaria a la muerte de ésta, totalizan $10,917.61. No estando en controversia el hecho de que la señora Cintrón Pou tiene un crédito por $12,939.73 correspondiente a lo pagado por ella para amortizar la hipoteca que gravaba la propiedad, ésta todavía tendría a su favor un crédito de $2,022.12.

Somos del criterio de que dicho crédito no debe ser pagado por el E.L.A. Ello por entender que el Estado hereda a beneficio de inventario y sólo debe responder hasta donde alcancen los bienes del caudal. Veamos.

## III

Si bien nuestro Código Civil guarda total silencio sobre esta materia, siguiendo las claras disposiciones del Código Civil español, la doctrina puertorriqueña sostiene que por no poder repudiar la herencia que recibe en su condición de servidor de la comunidad el E.L.A. hereda a beneficio de inventario. Véase E. González Tejera, <u>Derecho Sucesorio Puertorriqueño</u>, Vol. I, San Juan, 2005, pág. 78. Coincidimos con ese criterio.

Según el profesor González Tejera, el beneficio de inventario a favor del Estado está implícito en la naturaleza misma del llamamiento. E. González Tejera, *Id*. Debemos recordar que por mandato de ley el Estado sólo entra en escena para heredar, cuando los bienes quedan vacantes por la ausencia de herederos forzosos o voluntarios. Por ello estamos de acuerdo con el referido

autor quien afirma en su obra que en un supuesto análogo al caso de autos, en donde se plantea la responsabilidad del Estado por las deudas del causante en exceso del valor del caudal relicto, no debe imponerse una responsabilidad *ultra vires* al Gobierno. E González Tejera, supra, pág. 79. Esto es, el Estado no debe —a cargo de la comunidad— responder por deudas que el causante no hubiese podido satisfacer.

En vista de todo lo anterior, concluimos que el E.L.A. no debe responder por el balance no satisfecho de $2,022.12 en favor de la señora Cintrón Pou.

IV

Por los fundamentos que anteceden, se revoca la sentencia del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que continúe con los procedimientos conforme a lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez disiente con opinión escrita. La Jueza Rodríguez Rodríguez no intervino.


Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ana Margarita Cintrón Pou

     Peticionaria

        v.                CC-2006-664

Estado Libre Asociado de
Puerto Rico

      Recurrido

Opinión Disidente emitida por el Juez Asociado Señor Rivera Pérez.

San Juan, Puerto Rico, a 19 de diciembre de 2008.

Sin mayores contenciones, el presente recurso nos plantea sencillamente una acción de división de comunidad de bienes. Mediante la Sentencia que certifica la Mayoría, y contraviniendo los principios aplicables a la liquidación de una comunidad de bienes, resuelven que corresponde en primer lugar dividir de inmediato la cosa común adjudicando a cada comunero su haber y posteriormente, tomar en consideración los activos y pasivos existentes, como el cobro de créditos. Igualmente, aprovechamos la coyuntura del presente caso para expresar nuestra postura en relación a la

naturaleza jurídica de la sucesión a favor del Estado. Por discrepar de los pronunciamientos de la Mayoría, respetuosamente disentimos.


I

En el año 1999, la Sra. Ana Margarita Cintrón Pou y la Sra. María P. Estrella Peña, adquirieron en comunidad una propiedad ubicada en la Urbanización Constancia de Ponce. La participación sobre el bien inmueble era del cincuenta por ciento (50%) cada una. El pago de la hipoteca que gravaba la propiedad fue asumida conjuntamente, con un balance original de $69,400.00.

En enero de 2001, la señora Estrella Peña falleció intestada y sin herederos. Así, mediante sentencia emitida por el Tribunal de Primera Instancia, el 27 de enero de 2003, se declaró al Estado como único y universal heredero de la causante, señora Estrella Peña. El caudal hereditario de la señora Estrella Peña se componía de la propiedad poseída en común con la señora Cintrón Pou y una cuenta de banco cuyo balance a la muerte de la causante era de $2,369.00.

El 22 de enero de 2003, la señora Cintrón Pou, solicitó ante el Tribunal de Primera Instancia la división de la comunidad de bienes habida entre ella y el Estado respecto a la propiedad antes mencionada. Además, **la demandante reclamó un crédito por la cantidad de $25,403.21 correspondientes a los pagos realizados por ella para el**

**pago del préstamo hipotecario contraído en comunidad, así como la cantidad de $476.26 por el pago de contribuciones sobre la propiedad.**

El 27 de diciembre de 2004, la propiedad se vendió por la cantidad de $85,000.00. El producto de la venta, luego de saldado el préstamo hipotecario fue de $17,097.23. Dicha cantidad, fue consignada en el tribunal en lo que se dilucidaba la reclamación de la señora Cintrón Pou.

Atendida la solicitud de la señora Cintrón Pou, el Tribunal de Primera Instancia, a la luz del Artículo 327 del Código Civil[1] determinó que tanto la señora Cintrón Pou como el Estado venían obligados a asumir por partes iguales la obligación hipotecaria que gravaba el inmueble vendido, así como los pagos por concepto de contribuciones al CRIM. Habiendo la señora Cintrón Pou efectuado la totalidad de los pagos, ascendente a $25,879.47, dicho foro determinó que surgía a su favor un crédito de $12,939.73.

Este crédito fue descontado de la cantidad de $17,097.23 consignada en el tribunal y el sobrante de $4,157.50 fue a su vez dividido entre los comuneros para adjudicar la cantidad de $2,078.75 a la señora Cintrón Pou y $2,078.75 al Estado, como sucesor de la señora Estrella Peña. De este modo, el foro primario le otorgó a la señora Cintrón Pou la cantidad de $15,018.48 y, la cantidad de $2,078.75 al Estado.

---

[1] 31 L.P.R.A sec. 1272.

En lo que respecta a la cuenta bancaria, el tribunal resolvió que ésta no formaba parte de la comunidad de bienes que existió entre la causante y la señora Cintrón Pou por lo cual determinó que dichas sumas le correspondían al Estado en calidad de único y universal heredero de la señora Estrella Peña.

Inconforme con dicha determinación, la señora Cintrón Pou, acudió ante el Tribunal de Apelaciones el cual confirmó la sentencia recurrida.

En el recurso ante nos, la señora Cintrón Pou aduce que, **antes de descontar el crédito correspondiente al pago de la hipoteca**, crédito sobre el cual no existe controversia, el foro primario debió adjudicarle <u>la mitad del sobrante de la venta de la propiedad</u> que poseían en comunidad, es decir, $8,548.61 y <u>posteriormente, en adición a dicha cantidad</u>, el correspondiente crédito de $12,939.73, proveniente de los pagos de la hipoteca. De este modo, reclamó que el total que se le debía adjudicar era de $21,488.34. Toda vez que dicha cantidad excedía lo obtenido como sobrante en la venta de la propiedad que tenían en común, la Sra. Cintrón Pou señaló que era acreedora de todos los activos del caudal relicto[2] de la señora Estrella Peña, es decir $19,466.23.

Finalmente, es la postura de la señora Cintrón Pou, que en vista de que aún se le adeudaba la cantidad de

---

[2]  17,097.23 sobrante al saldo de la hipoteca.
 +  2,369.00 cantidad de la cuenta bancaria.
   19, 466.23

$2,022.11, el Estado debe responder por el pago de la referida suma de dinero. En la alternativa adujo que de entenderse que el Estado hereda a beneficio de inventario, su reclamo se extendería únicamente hasta donde alcancen los bienes del caudal relicto de la causante.

III

La Mayoría parte de la premisa que los foros inferiores erraron al descontar el crédito de la aquí peticionaria señora Cintrón Pou, de la totalidad del producto sobrante de la venta del inmueble, para luego adjudicar las cantidades correspondientes a las cuotas de cada comunera. Es decir, que el crédito por los pagos de la hipoteca en exceso realizados por la señora Cintrón Pou debe ser descontado del caudal hereditario de la causante y no del producto de la venta del bien inmueble en común.

Disentimos por dos razones. En primer lugar, entendemos que la operación matemática que hoy avala la Mayoría, adolece del error de mezclar dos operaciones particionales, la partición de una comunidad de bienes y la partición de una comunidad hereditaria.

Es decir, la división del bien comunitario y la adjudicación de una de esas mitades inmediatamente al caudal de la causante, **es anticipada toda vez que se realiza sin completar la liquidación de su relación como comunera con la señora Cintrón Pou**. Es principio fundamental que el sobrante o el remanente es lo que debe

formar parte del activo de la herencia, pues no se puede entender liquidado un bien en comunidad con la mera división del mismo. **La liquidación de la comunidad de bienes habida entre ambas es independiente a la división de la herencia de la causante**. Por esta razón entendemos que fue correcto liquidar la comunidad en la cual participaba la sucesión **antes** de adjudicar lo correspondiente al Estado como heredero único y universal.

II

En nuestra jurisdicción, la comunidad de bienes está reglamentada por los contratos que las crean, las disposiciones especiales aplicables, y a falta de éstos por lo dispuesto en los Artículos 326 a 340 del Código Civil.[3]

Conforme a estos postulados existe una comunidad de bienes cuando la propiedad de una cosa o de un derecho pertenece de modo pro-indiviso a varias personas.[4] Es decir, se trata de una situación en que dos o más personas son titulares de un mismo derecho, o cuando un derecho o conjunto de derechos están atribuidos a una pluralidad de sujetos, correspondiéndoles en común.[5] El tipo de comunidad que regula nuestro ordenamiento es la llamada *"condominium iuris romani"* en la que cada comunero es dueño de una cuota

---

[3] 31 L.P.R.A. secs. 1271-1285.

[4] Artículo 326 del Código Civil, 31 L.P.R.A. sec. 1271.

[5] Residentes Sagrado Corazón v. Arsuaga, 160 D.P.R. 289 (2003).

ideal o alícuota de la cosa.[6]

A tenor con el Artículo 327 de nuestro Código Civil, la participación de los comuneros en la administración de la cosa tenida en común, así como su parte en el **activo y pasivo**, será proporcional a sus respectivas cuotas. Se presume que dichas cuotas son iguales, mientras no se pruebe lo contrario.[7] El referido artículo establece la correlación entre los beneficios y las cargas **dentro de la cuota de la propiedad**.[8] Como parte de lo que constituye los beneficios se entiende que cada comunero tiene derecho al uso y a los frutos del bien comunitario en proporción a su cuota.[9]

Las cargas son aquellas que recaen sobre la propiedad en general, como pueden ser, los gastos de conservación, de administración, los impuestos, y en general, todo lo que se derive del funcionamiento de la propiedad del objeto o derecho.[10] Tanto los beneficios y las cargas surgen en virtud del derecho de propiedad de cada uno de los copropietarios sobre la cosa común.

En lo que respecta al uso del bien común, nuestro Código Civil dispone que: "[c]ada partícipe podrá servirse

---

[6] Díaz v. Aguayo, 162 D.P.R. 801, 808 (2004).

[7] 31 L.P.R.A. sec. 1272.

[8] I. Sierra Gil de la Cuesta, *Comentarios del Código Civil*, Tomo III, Ed. Bosch, S.A. Barcelona, 2000, pág.247.

[9] *Íd.*

[10] Íd.

de las cosas comunes, siempre que disponga de ellas conforme a su destino y de manera que no perjudique el interés de la comunidad, ni impida a los copartícipes utilizarlas según su derecho".[11] Ello así pues mientras subsista la comunidad ninguno de los comuneros puede hacer gestión alguna que perjudique los intereses de aquellos.[12]

Los comuneros deben proteger de buena fe el bien común, máxime cuando dicho bien se encuentra de facto, bajo control y administración exclusiva de uno de ellos. Así lo exige la naturaleza de la relación de una comunidad en liquidación, pues, **llegado el momento de la división**, habrá que entregar lo que por derecho corresponda a cada comunero.[13]

Respetando tales postulados es que cada uno de los copropietarios tiene el derecho de realizar los actos de conservación de la cosa.[14] Esta distinción es esencial toda vez que, según dispuesto en nuestro Código Civil, cualquier comunero tiene derecho a obligar a los demás a contribuir a los **gastos de conservación de la cosa o derecho común** y solo podrá eximirse de ésta obligación el que renuncie a la parte que le pertenece en su dominio.[15] Tal facultad,

---

[11] Artículo 328 del Código Civil, 31 L.P.R.A. sec. 1273.

[12] J. Beltrán de Heredia y Castaño, *La comunidad de Bienes en el Derecho Español*, Editorial Revista de Derecho Privado, Madrid, 1954, pág. 234.

[13] González v. Quintana, 145 D.P.R. 463, 473 (1998).

[14] J. Beltrán de Heredia y Castaño, op. cit., pág. 245.

[15] Artículo 329 del Código Civil, 31 L.P.R.A. sec. 1274.

concedida al comunero que anticipa el pago de las expensas necesarias para preservar el haber común, tiene necesariamente que medirse en proporción con sus respectivas cuotas.

Ahora bien, ¿qué constituye un gasto de conservación? El concepto de "gastos de conservación", es susceptible de varios matices y grados. Es preciso circunscribir el mismo y considerar aquellos gastos necesarios e indispensables para la conservación de la cosa en buen estado y en forma idónea de forma tal que sirva para su destino.[16] Esencialmente son actos dirigidos a mantener la utilidad y productividad de la cosa común y procurar que ésta permanezca al servicio del destino al que está afectada.[17] Del mismo modo, actos de conservación implica efectuar gestiones necesarias para que la cosa en común no se deteriore ni perezca.[18] A modo de ejemplo podemos mencionar entre otros, los gastos por reparación de los daños causados por fuerza mayor, o por terceros a la propiedad, gastos para prevenir un daño inminente o predecible, daños producidos por causas que existían con anterioridad en la propiedad, gastos por reconstrucción de la cosa. Por el contrario, no pueden considerarse incluidos dentro del concepto de gastos necesarios de conservación los

---

[16] <u>Residentes Sagrado Corazón v. Arsuaga</u>, 160 D.P.R. 289 (2003).

[17] *Íd.*

[18] *Íd.*

realizados para aumentar el disfrute o rendimiento de la cosa común.[19]

En cuanto a la división de la cosa común, ésta puede tener lugar en cualquier momento, a petición de cualquiera de los comuneros, ya que ninguno de éstos está obligado a permanecer en la comunidad.[20] Por disposición expresa contenida en nuestro Código Civil, las relaciones jurídicas entre los copropietarios se liquidaran mediante la técnica jurídica de la partición hereditaria.[21] Es decir, para las operaciones de liquidación de la comunidad de bienes, se recurre supletoriamente a las disposiciones concernientes a la división de la comunidad hereditaria.[22]

La partición no será otra cosa que la separación, división, y repartición de los bienes y derechos que componen la comunidad de bienes una vez liquidada. El contenido o el objeto de la partición exige reconocer los bienes, derechos y obligaciones, es decir los activos y los pasivos. La misma cumple una doble finalidad. De una parte,

---

[19] Véase, J. Beltrán de Heredia y Castaño, op.cit., págs. 247-253.

[20] Artículo 334 del Código Civil, 31 L.P.R.A. sec. 1279.

[21] Artículo 340 de nuestro Código Civil, 31 L.P.R.A. sec. 1285. **Reglas aplicables a la división de la comunidad de bienes:**

> "Serán aplicables a la división entre los partícipes en la comunidad, las reglas concernientes a la **división de la herencia**". (Énfasis nuestro).

[22] Artículo 340 del Código Civil, *supra*. Véase además, Montalván v. Rodríguez, 161 D.P.R. 411 (2004), Opinión emitida por el Juez Presidente señor Hernández Denton.

liquidar el caudal comunitario, **rebajando de su importe las deudas y las cargas** y de otra parte, hacer cesar la indivisión.[23]

Tanto la liquidación de la comunidad de bienes, como la liquidación de una comunidad hereditaria, comprenden todas las operaciones necesarias para determinar la existencia e identificación de los bienes que componen el haber común para luego proceder a su división. De ordinario, dicho trámite requiere que se realice un inventario de todos los activos (bienes y derechos) y pasivos (obligaciones y cargas) y el avalúo de los mismos.[24]

A ésta cantidad o valor final, a ser dividido, se llega después de deducir y adjudicar los créditos correspondientes a cada uno.[25] Solo así, una vez pagadas las deudas, cargas y obligaciones de la comunidad de bienes, se procederá a la liquidación adjudicando el remanente a cada comunero.[26] Es decir, conforme al irrefutable principio **"antes pagar que heredar"** una liquidación del caudal común o del caudal hereditario exige que, previo a dividirse y adjudicarse a sus correspondientes comuneros su parte, se proceda al cobro de

---

[23] J. Cuevas Segarra, A. Román García, *Derecho Sucesorio Comparado: Puerto Rico y España*, Publicaciones JTS, 2003, pág. 395.

[24] Proceso para cual el Artículo 1017 de nuestro Código Civil, 31 L.P.R.A. sec 2883, dispone que se deducirán de la herencia.

[25] Montalván v. Rodríguez, *supra*.

[26] *Íd*.

créditos, el pago de deudas, y una vez efectuado y determinado el saldo partible, se proceda a la división y adjudicación de los bienes del haber sobrante entre los partícipes.[27]   Esta adjudicación final se realiza en función de sus respectivas participaciones.

Acorde con lo anterior nos corresponde determinar si los cálculos que efectúo el Tribunal de Primera Instancia y que fueron confirmados por el Tribunal de Apelaciones son correctos.

No existe controversia en que ante el fallecimiento de la señora Estrella Peña *ab intestato* y sin herederos, el Estado como heredero único y universal se convirtió en propietario de la participación del 50% sobre la propiedad que la causante poseía en común pro indiviso con la Sra. Cintrón Pou. A su vez, la señora Cintrón Pou, continuó pagando la hipoteca que gravaba el inmueble así como el pago de contribución sobre propiedad inmueble. Los pagos efectuados totalizaron la cantidad de $25,879.47. Las sentencias de los foros recurridos determinaron que siendo la participación sobre el bien inmueble de cincuenta porciento (50%) para ambas partes, la mitad de esos pagos le correspondía a la señora Cintrón Pou y la otra mitad al Estado. De este modo quedó establecido su derecho a reclamar el crédito correspondiente.

En el escrito ante nos, la señora Cintrón Pou planteó que el tribunal debió antes de descontarle el crédito

---

[27] J. Cuevas Segarra, op.cit. pág. 418.

ascendente a la mitad de lo pagado por ella, dividir el producto de la venta del bien común, adjudicándosele a ambas partes el cincuenta por ciento (50%). Entendemos que el error señalado no se cometió.

Como hemos discutido, la liquidación del bien común conlleva el **cobro de créditos**, **el pago de deudas** y **posteriormente la división y adjudicación de los bienes del haber sobrante entre los partícipes**. Por ende, el foro recurrido conforme a derecho procedió a saldar el préstamo hipotecario que gravaba el bien inmueble, descontó el crédito de la causante y el sobrante se dividió y adjudicó entre el Estado y la señora Cintrón Pou. Ello se efectuó conforme a su participación en el bien inmueble, es decir por mitad.

Es preciso señalar que nuestro análisis en ningún momento omite el determinar en primer lugar la cantidad que representa la cuota de cada comunero. No obstante, en este caso, el crédito por la hipoteca no es un derecho a repetir contra el caudal relicto. La hipoteca es un gravamen que recae sobre la totalidad del bien inmueble, lo cual a su vez desde su constitución, se convirtió en una de las obligaciones asumidas por cada una de las partes. Conforme a los principios aplicables a la liquidación de la comunidad de bienes, el dinero que la venta del inmueble produjo bastaba para saldar el crédito reclamado por la señora Cintrón Pou, cantidad que fue descontada de la parte correspondiente al Estado y adjudicada a ésta. Una vez

pagado, no restaba crédito alguno pendiente que exigiese adjudicarse como un pasivo de la herencia para ser pagado a la señora Cintrón Pou.

Por tanto, concluimos que la participación de la Sra. Cintrón Pou en la comunidad no se extiende más allá del crédito por $12,939.73 antes mencionado y la mitad del sobrante de la venta de la propiedad poseída en común y pro indiviso con el Estado, es decir, $2,078.75. Por los fundamentos antes expuestos entendemos que era procedente confirmar las sentencias recurridas.

IV

Finalmente, nos resta aún expresar nuestro criterio en torno a la naturaleza jurídica de la sucesión del Estado y la limitación de su responsabilidad que declara la opinión mayoritaria.

Como indica el Artículo 912 de nuestro Código Civil[28], "*[a] falta de personas que tengan derecho de heredar, heredará el Estado Libre Asociado de Puerto Rico, destinándose los bienes al Fondo de la Universidad*". Subsiguientemente, nuestro Código Civil establece que para que el Estado pueda apoderarse de los bienes hereditarios, es necesario que preceda una declaración judicial de heredero a su favor adjudicándole los bienes vacantes.[29]

Al amparo de lo dispuesto en el Artículo 876 de nuestro Código Civil, fue establecida una delación legal a

---

[28] 31 L.P.R.A. sec. 2691.

[29] Artículo 913 del Código Civil, 31 L.P.R.A. sec. 2692.

favor del Estado, mediante el cual éste se considera un heredero de índole privatista.[30]

La Mayoría justificó la limitación de la responsabilidad del Estado y resolvió que éste tiene el deber de completar o compensar únicamente hasta donde alcancen los bienes recibidos, por heredar en beneficio de inventario. Entendemos que tal conclusión establecida por *fiat judicial*, no considera que nuestro Código Civil no establece que el Estado hereda en beneficio de inventario. Por considerar que la Mayoría incurre en un acto de legislación judicial en contravención al principio constitucional de separación de poderes disiento una vez más.

En el presente caso se le exige al Estado que, <u>como cualquier heredero</u>, cumpla con la obligación de satisfacer al comunero que pagó en exceso conforme a sus derechos. Sin embargo, cabe preguntarnos si en adición a sus obligaciones, se le reconoce al Estado la participación en los beneficios de la cosa común.

El Estado, como comunero tenía también derecho al disfrute del bien inmueble en controversia en un 50%.

---

[30] El Artículo 876 de nuestro Código Civil, lee del modo siguiente:

> "A falta de herederos testamentarios, la ley defiere la herencia, según las reglas que se expresarán, a los parientes legítimos y naturales del difunto, al viudo o viuda, y al Estado Libre Asociado de Puerto Rico".

Obviamente, uso y disfrute que estará limitado a su condición de persona jurídica.

Es por ello que, un aspecto a considerar al momento de la liquidación, lo era el crédito a favor del Estado por el uso particular y exclusivo en beneficio de una persona natural. Ello como consecuencia lógica y justa, en ausencia de un pacto o compensación, por el uso exclusivo del bien común.

Anteriormente, basados en criterios de equidad, expresamos que el uso exclusivo del bien común por uno de los comuneros da lugar a un crédito a favor del comunero excluido.[31] Además, precisamos que no se trata de un "mero uso exclusivo" sino que se trata de una privación sin la aportación correspondiente que a su vez impide a los demás dueños utilizar la misma.[32]

Por tanto, en el caso ante nuestra consideración, el Estado era acreedor de un crédito por los años que la señora Cintrón Pou se benefició de manera exclusiva del uso de la propiedad. El Estado, precisamente por no haberla utilizado y, en ausencia de alguna aportación establecida no se benefició del bien comunitario.

No podemos perder de perspectiva en nuestras decisiones que el derecho no opera en lo abstracto y que tiene como propósito perseguir el bien para alcanzar la

---

[31] Díaz v. Aguayo, 162 D.P.R. 801 (2004).

[32] Íd.

justicia. Por ende, siendo un ejercicio lógico y racional, la división efectuada por los foros inferiores fue correcta en derecho y en justicia.


*Efraín E. Rivera Pérez*
*Juez Asociado*