ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| VANESSA DELGADO ECHEVARRÍA, Apelada, v. FRANCISCO LÓPEZ RODRÍGUEZ, Apelante. | KLAN202400288 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de Carolina. Civil núm.: CA2021CV00027. Sobre: división o liquidación de comunidad de bienes. |
|---|---|---|

Panel integrado por su presidente, el juez Hernández Sánchez, la jueza Romero García y la jueza Martínez Cordero.

Romero García, jueza ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 28 de mayo de 2024.

Comparece el apelante Francisco López Rodríguez y nos solicita que revisemos y revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina, el 18 de enero de 2024, notificada a las partes el día siguiente. Mediante la misma, el foro primario liquidó la comunidad de bienes y autorizó la venta en pública subasta del bien inmueble objeto de la controversia.

Por los fundamentos que expondremos a continuación, **modificamos en parte y, así modificada, confirmamos** la sentencia apelada.

I

El 8 de enero de 2021, la señora Vanessa Delgado Echevarría (apelada) incoó una demanda contra su excónyuge el señor Francisco López Rodríguez (apelante) y solicitó la división de la comunidad de bienes[1]. En ella, expuso que había contraído matrimonio con el apelante el 28 de noviembre de 2016, bajo el régimen de capitulaciones matrimoniales. Aclaró que, previo a contraer matrimonio, adquirieron el bien inmueble en controversia.  A saber:

---

[1] *Véase*, apéndice del recurso, a las págs. 50-52.

Número identificador

SEN2024_____

---RUSTICA: Parcela de terreno identificada como solar número treinta y tres (33) del Bloque "SC" de la Urbanización Primavera, radicada en el Barrio Dos Bocas del término municipal de Trujillo Alto, Puerto Rico, con una cabida superficial de NOVECIENTOS PUNTO NOVENTA Y DOS (900.92) METROS CUADRADOS. En lindes por el NORTE, distancia en arco de dieciocho punto noventa y dos (18.92) metros y diez (10.00) metros, con la calle cuatro (4) y el solar número treinta y dos (32); por el SUR, en una distancia veintiuno punto noventa y uno (21.91) metros, con P.R.E.P.A., "Right of Away"; por el ESTE, en una distancia de cuarenta y ocho punto veintiséis (48.26) metros, con Quebrada Grande Creek; y por el OESTE, en una distancia de treinta y dos punto sesenta y tres (32.63) metros, con el solar número treinta y cuatro (34).-------------------------

Inscrita al folio ciento ochenta y uno (181) del Tomo setecientos setenta y cinco (775) de Trujillo Alto, Finca número veintiséis mil setecientos ocho (26,708) del Registro de la Propiedad de San Juan, Sección Cuarta (IV).

Número de Catastro: 116-092-354-33-000[2]

De otra parte, alegó que la propiedad antes descrita fue tasada y valorada en $355,000.00. También, adujo que, previo a contraer matrimonio, las partes suscribieron el préstamo hipotecario que grava la propiedad y el balance adeudado, del cual eran responsables en porciones iguales, era aproximadamente $158,000.00. Cabe resaltar que **la señora Delgado admitió en su demanda que, con relación al préstamo hipotecario, el señor López había efectuado todos los pagos desde junio de 2019**[3]. Destacó que el señor López disfrutaba con exclusividad la propiedad. Finalmente, la señora Delgado apuntó que le había realizado mejoras a la propiedad, las cuales valoró en $43,162.28, y que había abonado $100,000.00 de su peculio para el pago del pronto de la propiedad.

Por su parte, el señor López contestó la demanda el 28 de febrero de 2021[4]. En lo pertinente, adujo que el pago mensual de la hipoteca era de **$1,897.13**, sin considerar los pagos del HOA[5], y alegó que la señora Delgado siempre había tenido acceso a la propiedad, así como a las áreas

---

[2] *Véase*, apéndice del recurso, a las págs. 50-52.

[3] Según surge de la demanda, el referido pago mensual era de **$1,323.56**.

[4] *Íd.*, a las págs. 53-54.

[5] HOA se refiere al *Homeowners Association*.

recreativas para su uso y disfrute. A su vez, planteó que las cantidades que la señora Delgado alegaba haber aportado para las mejoras y el pronto de la casa estaban sobreestimadas.

Tras varias incidencias procesales, el 17 de noviembre 2022, se celebró la conferencia con antelación a juicio[6]. Según surge de la minuta, en esa ocasión se estipularon ciertos hechos y se identificó la prueba documental. Entre los hechos estipulados se encontraban: las aportaciones hechas por cada parte al pronto pago del bien inmueble y el hecho de que el señor López era quien realizaba los pagos mensuales correspondientes a la HOA y a la hipoteca.

El 14 de noviembre de 2023, se celebró el juicio en su fondo. Según surge de la minuta, las partes informaron que someterían el caso por el expediente y que no objetarían la prueba documental ofrecida. Cabe resaltar que durante el juicio las partes iniciaron unas conversaciones dirigidas a transigir el caso, sin embargo, la señora Delgado rechazó el acuerdo, por lo que el tribunal ordenó la continuación de los procedimientos.

Sometido el asunto, el 19 de enero de 2024, el Tribunal de Primera Instancia notificó su *Sentencia*. En lo pertinente, al reconocer los créditos de la señora Delgado, determinó que conforme a la prueba documental los mismos ascendían a **$34,547.64**[7]. Dispuso que, en cuanto a los créditos correspondientes al señor López, estos ascendían a la cantidad de **$8,250.00**[8]. A su vez, estableció que de la prueba documental admitida el pago por concepto de hipoteca era de **$1,323.56**[9]. Concluyó que los créditos a favor del señor López por los pagos que este realizó a la hipoteca totalizaban **$39,706.80**[10]. Finalmente, luego de adjudicar los porcientos de

---

[6] *Véase*, apéndice del recurso, a las págs. 55-58.

[7] *Íd.*, a la pág. 3.

[8] *Íd.*, a la pág. 6

[9] *Íd.*

[10] *Íd.*

participación de cada comunero, el foro primario autorizó la venta en pública subasta del bien inmueble objeto de esta controversia.

Inconforme con la referida determinación, el 5 de febrero de 2024, el señor López presentó una moción de reconsideración[11]. En lo pertinente, se opuso a la autorización en venta judicial de la propiedad inmueble y adujo que el foro primario había incidido al no reconocer su derecho de tanteo. Además, planteó que el foro primario había errado al realizar las operaciones aritméticas tanto en la suma de los créditos como en la adjudicación de estos, y al no disponer sobre los créditos posteriores a la sentencia.

Por su parte, el 22 de febrero de 2024, la señora Delgado presentó su oposición a la moción de reconsideración[12]. En ella, concedió que el foro primario había errado al realizar algunos de los cálculos aritméticos relacionados a los créditos correspondientes a cada parte. No obstante, se opuso a que el tribunal le reconociera al señor López el derecho de tanteo; reiteró que la autorización de la venta de la propiedad en pública subasta era lo procedente.

El 26 de febrero de 2024, el Tribunal de Primera Instancia declaró sin lugar la solicitud de reconsideración[13].

Aún inconforme, el 25 de marzo de 2024, la parte apelante compareció y formuló los siguientes señalamientos de error:

> Erró el TPI al no enmendar la sentencia a pesar de que los errores matemáticos señalados por la parte demandada-apelante en su reconsideración fueron reconocidos también por la parte demandante-apelada.
>
> Erró el TPI al emitir sentencia basándose en prueba que no forma parte del expediente.
>
> Erró el TPI al no reconocerle el derecho de tanteo que tiene la parte demandada-apelante sobre la propiedad de la comunidad de bienes.
>
> Erró el TPI al realizar la adjudicación de las correspondientes participaciones y créditos de las partes.

---

[11] *Véase*, apéndice del recurso, a la pág. 16.

[12] *Íd.*, a las págs. 31-47.

[13] *Íd.*, a la pág.48.

> Erró el TPI al no expresarse ni disponer nada en cuanto a los créditos que puedan y continúan surgiendo con posterioridad a la sentencia.

(Énfasis omitido).

El 23 de abril de 2024, la señora Delgado presentó su alegato en oposición.

Con el beneficio de la comparecencia de las partes, resolvemos.

II

A

Una comunidad de bienes existe cuando la propiedad de una cosa o de un derecho pertenece proindiviso a varias personas. Art. 835 del Código Civil, 31 LPRA sec. 8191. La participación de los comuneros será en proporción a sus respectivas cuotas, tanto en los beneficios como en las cargas. Art. 837 del Código Civil, 31 LPRA sec. 8193. El Código Civil también dispone que "[e]l comunero no está obligado a permanecer en la comunidad y tiene derecho a pedir en cualquier tiempo que se divida la cosa común. Art. 850 del Código Civil, 31 LPRA sec. 8223. En lo pertinente a la controversia de autos, establece que:

> Si la cosa común es esencialmente indivisible o resulta inservible en caso de división, **puede adjudicarse a uno o a más comuneros, tras reintegrar a los demás en dinero**. Si por voto mayoritario los comuneros no están de acuerdo con la adjudicación, se procederá con la venta de la cosa en pública subasta y con la partición del precio entre ellos.

Art. 857 del Código Civil, 31 LPRA sec. 8230. (Énfasis nuestro).

Es importante mencionar que la división de la comunidad de bienes se regirá conforme a las normas concernientes de la división de una herencia. Art. 859 del Código Civil, 31 LPRA sec. 8232. *Véase*, además, *Díaz v. Aguayo*, 162 DPR 801, 809 (2004).

De otra parte, el derecho de opción de compra, el de tanteo y el de retracto, conforman la categoría de derechos reales de adquisición preferente. Art. 1022 del Código Civil, 31 LPRA sec. 8801. El Código Civil los define como aquellos derechos limitados, que facultan a su dueño o titular a conseguir preferentemente la transmisión de una cosa o de un derecho, mediante el pago de su precio y el cumplimiento de los demás

requisitos dispuestos en el negocio jurídico o la ley. Art. 1022 del Código Civil, 31 LPRA sec. 8801.

En nuestro ordenamiento jurídico, el derecho de tanteo autoriza a su titular para la adquisición preferente de una cosa, en caso de que el propietario de esta quiera enajenarla mediante un acto oneroso. Art. 1033 del Código Civil, 31 LPRA sec. 8831. Por tanto, el Tribunal Supremo de Puerto Rico ha expresado que el tanteo otorga la facultad para que, en este último caso, se le manifieste así al propietario, indicándole el precio y las condiciones de la enajenación, si no se han pactado previamente. *González v. Sucn. Cruz*, 163 DPR 499, 455 (2004), citando a R. Badenes Gasset, *La preferencia adquisitiva en el Derecho español (tanteo, retracto, opción)*, Barcelona, Ed. Bosch, 1958, pág. 7; J. Santos Briz, *Derecho Civil*, Madrid, Ed. Rev. Der. Privado, 1973, T. II, págs. 700–702; J. Puig Brutau, *Fundamentos de Derecho Civil*, 3ra ed., Barcelona, Ed. Bosch, 1983, T. III, Vol. III, págs. 394–397; M. Coca Payeras, *Tanteo y retracto, función social de la propiedad y competencia autonómica*, Bolonia, Ed. Pubs. Real Colegio de España, 1988, pág. 34.

B

Es norma reiterada que, en ausencia de pasión, prejuicio, parcialidad o error manifiesto, los tribunales apelativos no debemos intervenir con la apreciación de la prueba de los tribunales de primera instancia. *Rodríguez v. Urban Brands*, 167 DPR 509, 522 (2006). Al definir lo que constituye pasión, perjuicio o parcialidad, el Tribunal Supremo ha expresado que:

> Incurre en "pasión, prejuicio o parcialidad" aquel juzgador que actúe movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna.

*Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 782 (2013).

La deferencia hacia el foro primario responde a que es el juez sentenciador el que tiene la oportunidad de recibir y apreciar toda la prueba testifical presentada, de escuchar la declaración de los testigos y evaluar

su comportamiento. *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 67 (2009).

Sin embargo, **la doctrina de deferencia judicial no es de carácter absoluto; se podrá intervenir "cuando la apreciación de la prueba no representare el balance más racional, justiciero y jurídico de la totalidad de la prueba"**. *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011). (Énfasis nuestro)

**También, se exceptúan de la regla de deferencia las determinaciones de hechos que se apoyan exclusivamente en prueba documental o pericial, ya que los tribunales apelativos estamos en idéntica posición que el tribunal inferior al examinar ese tipo de prueba**. *Íd.*

III

Mediante su primer señalamiento, la parte apelante aduce que el Tribunal de Primera Instancia erró al no enmendar la sentencia, a pesar de que los errores matemáticos apuntados en su reconsideración fueron reconocidos también por la parte apelada.

Con relación a este error, tanto el apelante como la apelada recalcaron estar de acuerdo en que el foro primario incidió al no enmendar la sentencia a pesar de que los cálculos matemáticos **no** coincidían con la realidad del caso, ni la prueba documental presentada. Es decir, que, en cuanto a los créditos reconocidos al apelante, el Tribunal de Primera Instancia expresó que estos ascendían a **$34,547.64,** sin embargo, la cantidad correcta resultaba ser **$39,183.68**.

En cuanto a los créditos por mejoras pagados por la apelada, el tribunal expresó que estos ascendían a $8,250.00, sin embargo, la cantidad correcta es **$9,050.00**.

Finalmente, en cuanto al pago mensual de la hipoteca, el foro primario expresó erróneamente que este era de $1,323.56; ambas partes están de acuerdo en que el pago mensual es **$1,843.11**.

Evaluada la prueba documental y las sendas posturas de las partes, coincidimos en que se cometió este primer error, según señalado, por lo que procede que dar por modificada la sentencia en cuanto a las cantidades antes consignadas, de conformidad a la prueba que obra en autos.

Sobre el segundo señalamiento, la parte apelante adujo que el foro primario incidió al emitir una sentencia fundamentada en prueba que no formó parte del expediente.

La parte apelante arguyó que de la propia sentencia **surgía lo estipulado por las partes,** en cuanto a que el señor López asumió el pago de la hipoteca desde julio 2019, por lo que el foro primario debió calcular el término de pago a cincuenta y cuatro (54) meses, a razón de $1,843.11 mensuales, cuyo monto equivaldría a **$99,527.94**[14]. Además, resaltó que, en su oposición a la moción de reconsideración, la parte apelada hizo alusión a un acuerdo de pago diferido suscrito con Firstbank, por el término de diez (10) meses, no obstante, en el récord no existía evidencia alguna al respecto.

Cabe resaltar que, en sus escritos, **ambas partes reconocen que medió un error en el cálculo del pago de la hipoteca y que la controversia sobre el cómputo por los pagos diferidos no estuvo ante la consideración del Tribunal de Primera Instancia**.

Según discutimos, en cuanto a las determinaciones de hechos que se apoyan exclusivamente en prueba documental o pericial, esta curia se encuentra en la misma posición que el Tribunal de Primera Instancia. No encontramos nada en el expediente que justificara el calculo del pago de la hipoteca según expuesto por el foro primario. En ese sentido, estamos de acuerdo en que se cometió este segundo error y que, **de acuerdo con los hechos estipulados, el cálculo de la hipoteca debe hacerse a razón de $1,843.11, por la cantidad de meses transcurridos desde julio 2019**.

---

[14] *Véase*, apéndice del recurso, a la pág. 2.

En el tercer error, la parte apelante señaló que el foro primario había errado al no reconocerle el derecho de tanteo sobre la propiedad de la comunidad de bienes.

La parte apelante arguye que, una vez declarada la propiedad como un bien indivisible al amparo del Art. 857 del Código Civil de Puerto Rico, 31 LPRA sec. 8230, procedía que se adjudicara la propiedad a los comuneros, y solo en la eventualidad de que no se llegara a un acuerdo, proceder con la venta en publica subasta. Además, resaltó que en múltiples ocasiones había manifestado su deseo de adquirir la participación de la apelada en la propiedad.

Por su parte, la apelada sostiene que durante todo el proceso de negociación extrajudicial y judicial el apelante tuvo la oportunidad de ejercer su derecho de tanteo. Arguye que el mero hecho de que no se haya llegado a un acuerdo no implica que se le haya negado su derecho de tanteo. Por tanto, procedía que se autorizara la venta en pública subasta, según lo había determinado el Tribunal de Primera Instancia.

Tal como discutimos, el derecho de tanteo es un derecho de adquisición preferente, que opera previo a la enajenación del bien indivisible.  En este caso, el apelante ha expresado su intención de adquirir la propiedad mediante distintas ofertas. De igual modo, surge que durante el juicio en su fondo las partes intentaron llegar a una transacción sin éxito[15]. Así, en cuanto a esta controversia, concluimos que no se cometió el error señalado. Según expresamos, cuando los comuneros no llegan a un acuerdo sobre la adjudicación, se procederá con la venta de la cosa en pública subasta y con la partición del precio entre ellos.

Con relación a su cuarto señalamiento de error, la parte apelante adujo que el Tribunal de Primera Instancia había errado al realizar la adjudicación de las correspondientes participaciones y créditos de las partes.

---

[15] *Véase*, apéndice del recurso, a las págs. 190-193.

En ánimo de prevalecer en su argumento, el apelante reiteró que las partes adquirieron el bien inmueble previo a contraer matrimonio. Sostuvo que para llevar a cabo dicha adquisición el apelante aportó $108,627.32, mientras que la apelada aportó $100,000.00, cada cual de sus bienes privativos[16]. Aclaró que contrajeron matrimonio y otorgaron capitulaciones matrimoniales mediante las cuales rechazaron expresamente el régimen de la sociedad legal de gananciales. Resaltó las discrepancias entre las cantidades aludidas por el Tribunal de Primera Instancia en su sentencia *vis à vis* las que quedaron probadas por la prueba contenida en el expediente. En esencia, planteó que proceder con la división según dispuesto por el foro primario generaría un enriquecimiento injusto, toda vez que la parte apelada obtendría un crédito mayor a lo que aportó para la partida de gastos de cierre.

Por igual, el apelante aludió a que el tribunal había errado al calcular los créditos de mejoras. Arguyó que en este caso el foro primario se había limitado a sumar los créditos de las partes y dividirlos en partes iguales, en vez de restarlos y aplicar los créditos correspondientes al valor asignado a la propiedad.

Por su parte, la apelada sostuvo que los créditos según adjudicados eran correctos en la medida en que las capitulaciones matrimoniales no le eran de aplicación. Ello, pues al momento de suscribir la compraventa las partes no habían contraído matrimonio. En su lugar, propuso que, por haber formado la comunidad de bienes previo a contraer matrimonio, los créditos eran susceptibles de un ejercicio de división al 50%.

Evaluado el derecho aplicable, coincidimos con la parte apelante en que la comunidad de bienes se conformó previo a la celebración del matrimonio y que las cuotas aportadas se presumen iguales de conformidad con el Art .837 del Código Civil, 31 LPRA sec. 8191. Acorde con ello, si bien modificamos las cantidades que las partes otorgaron para

---

[16] Estas cantidades fueron estipuladas en la conferencia con antelación a juicio, según surge de la minuta. *Véase*, apéndice del recurso, a la pág. 55.

efectos del pronto pago, la hipoteca y las mejoras, la fórmula del 50% para adjudicar las participaciones y créditos de las partes resulta ser la acertada.

Sobre el ultimo error señalado por la parte apelante, esta insistió en que el Tribunal de Primera Instancia había errado al no expresarse ni disponer nada en cuanto a los créditos que pudieran surgir con posterioridad a la sentencia. La apelada se opuso a tal aseveración y planteó que el tribunal dispuso sobre cómo se pagaría el balance y cualquier deuda sobre la propiedad, luego de la venta en publica subasta.

Al examinar la sentencia, surge que el foro primario dispuso que con la venta de la propiedad se pagaría el balance de la hipoteca y cualquier deuda sobre la propiedad. A su vez, ordenó a las partes a consignar el importe de la venta en la Unidad de Cuentas del tribunal, so pena de desacato. Dispuso que, con el referido importe, se pagaría la participación de cada parte. Finalmente expresó que, de haber algún sobrante, el mismo se repartiría entre el apelante y la apelada en parte iguales. Por tanto, concluimos que este último error tampoco fue cometido por el tribunal apelado.

IV

Por los fundamentos expuestos, **modificamos la *Sentencia* apelada y, así modificada, la confirmamos**.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones