ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ROBERTO PALOU BOSCH Y AMARILYS DE JESÚS GONZÁLEZ Y LA SOCIEDAD DE GANANCIALES<br><br>RECURRIDOS<br><br>V.<br><br>SUCESIÓN JORGE MORALES CRUZ COMPUESTA POR JORGE MORALES NAVARRO, ROBERTO MORALES NAVARRO, SUCESIÓN HAYDEE MORALES NAVARRO, LIMARIE O´FARRIL MORALES, DAGMARIE O´FARRIL MORALES, JAVIER O´FARRIL MORALES Y JULIA NAVARRO<br><br>PETICIONARIOS | KLCE202400749 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.<br>D AC2017-0363<br><br>(403)<br><br>Sobre:<br><br>DISOLUCIÓN DE COMUNIDAD DE BIENES Y OTROS |

Panel integrado por su presidente, el Juez Figueroa Cabán, la Juez Brignoni Mártir y el Juez Ronda del Toro

Brignoni Mártir, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de agosto de 2024.

Comparece ante nos, la Sucesión de Jorge Morales Cruz y de Julia Navarro Navarro, compuesta por Roberto Morales Navarro; los miembros de la sucesión de Jorge Morales Navarro, Wanda Ivette Morales Gómez y Janette Morales Gómez; y la sucesión de Haydeé Morales Navarro, compuesta a su vez por Limarie O´Farril Morales, Dagmarie O´Farrill Morales y Javier O´Farrill Morales (en adelante, en conjunto, "la parte peticionaria"). Su comparecencia es a los fines de solicitar nuestra intervención para que dejemos sin efecto la determinación emitida el 18 de abril de 2024 y notificada el 7 de mayo de 2024, por el Tribunal de Primera Instancia, Sala Superior de Bayamón. Mediante la referida determinación,

dicho tribunal autorizó la venta del bien comun a COOPORCI-PR. Todo, dentro de un pleito sobre disolución de comunidad de bienes incoado por Roberto Palou Bosch, Amarilys de Jesús González y la Sociedad de Bienes Gananciales compuesta por ambos, (en lo sucesivo, en conjunto, "la parte recurrida").

Por los fundamentos que expondremos, *expedimos* y *confirmamos* la determinación recurrida.

**I.**

El 30 de mayo de 2017, la parte recurrida presentó la "*Demanda*" de epígrafe. Dicha "*Demanda*" se instó mientras vivían los causantes Jorge Morales Cruz y Julia Navarro Navarro.[1] La parte recurrida expresó que formaba parte de una comunidad de bienes de la que también eran parte los referidos causantes. Comunicó, que su participación sobre el bien común consistía en un cincuenta por ciento (50%). Mientras que el otro cincuenta por ciento (50%) pertenecía a los señores Jorge Morales Cruz y Julia Navarro Navarro. Indicó, que el bien en cuestión se trataba de una finca sita en el Municipio de Guaynabo, dentro de la cual se forjó el negocio conocido como "*Macelo La Muda.*"

Acto seguido, sostuvo que no le interesaba continuar como miembro de la comunidad de bienes. Por lo cual, en la "*Demanda"* incoada presentó dos (2) causas de acción. En la primera de ellas peticionó la disolución de la comunidad de bienes.[2] Esto, dado que, habían resultado infructuosos sus intentos de dividir dicha comunidad de forma extrajudicial. Así pues, solicitó la venta de los bienes muebles e inmuebles que componían el negocio "*Macelo La Muda.*" Requirió que la venta fuera realizada por un corredor de bienes raíces seleccionado por las partes. En su defecto,

---

[1] El 5 de julio de 2017, la parte recurrida presentó una "*Demanda Enmendada*" a los únicos efectos de sustituir al señor Jorge Morales Cruz por sus herederos. Ello, toda vez, que falleció el 31 de mayo de 2017. Posteriormente, el 1 de septiembre de 2021, la señora Julia Navarro Navarro también falleció.

[2] Destacamos, que el 11 de diciembre de 2018, el foro recurrido emitió una "*Sentencia Parcial y Orden.*" Mediante esta, acogió lo resuelto por este Foro en el caso **KLCE201800978**. **En el precitado caso, un panel hermano dictaminó como cuestión de derecho que procedía dividir la comunidad de bienes en controversia. A esos efectos, el tribunal de instancia resolvió en su "*Sentencia Parcial y Orden"* que las partes debían establecer acuerdos sobre la forma en que se dividiría la comunidad de bienes. A tenor de ello, le requirió a las partes la presentación de las tasaciones, avalúos e inventarios correspondientes.**

solicitó que el referido corredor fuera escogido por el Tribunal. En la segunda causa de acción peticionó gastos legales por la cantidad de $50,000.00.

En reacción, el 5 de septiembre de 2017, la parte peticionaria presentó una "*Contestación a Demanda Enmendada.*" En esencia, argumentó que el hecho de que la parte recurrida tomara la decisión de dividir la comunidad de bienes no implicaba necesariamente que el bien común debía ser enajenado a una tercera persona. A tenor de ello, alegó que tiene un derecho de adquisición preferente sobre la cuota de participación de la parte recurrida, al momento que decidiera enajenarla. Por consiguiente, sostuvo que la parte recurrida debía poner su participación a disposición de los demás comuneros a los fines de que estos pudieran adquirirla prioritariamente.

En su escrito, la parte peticionaria instó una "*Reconvención.*" Mediante la cual, adujo que la reclamación de la parte recurrida se fundamentaba en la mala fe, dado que, su objetivo era destruir el destino agrícola de la propiedad común. A la luz de lo anterior, alegó que las actuaciones de la parte recurrida le habían ocasionado daños económicos por una cantidad no menor de $100,000.00. Además, arguyó que dicha parte le debía una cantidad no menor de $6,000.00 en concepto de gastos de conservación y mantenimiento de la propiedad. Finalmente, peticionó costas, gatos y honorarios de abogado.

Posteriormente, el 2 de diciembre de 2021, la parte recurrida presentó una "*Tercera Demanda Enmendada.*"[3] En síntesis, alegó que había sufrido una serie de daños económicos y emocionales. Entre los cuales, se encontraba que la parte peticionaria alegadamente había obstaculizado la libre disposición de la propiedad. Es decir, el proceso de venta de la cosa común. Fundamentó su postura, bajo el argumento de que

---

[3] Anteriormente, la parte recurrida había presentado una "*Contestación a la Reconvención y Segunda Demanda Enmendada.*" A través de la cual, argumentó que la parte peticionaria no tenía derecho a algún remedio en concepto de daños económicos. A su vez, negó la existencia de gastos de conservación y mantenimiento de la cosa común. De otra parte, solicitó una indemnización por los daños sufridos ante la negativa de la parte peticionaria de dividir la comunidad de bienes en cuestión. Valoró estos en la cantidad de $150,000.00.

la parte peticionaria se había negado a proveer la documentación necesaria para lograr la enajenación de la propiedad.

En respuesta, el 24 de junio de 2022, la parte peticionaria presentó una "*Contestación a Tercera Demanda Enmendada*." Mediante ella, negó las alegaciones de la parte recurrida referentes a la indemnización solicitada en concepto de daños. De otra parte, admitió que no produjo la documentación requerida para la venta de la cosa común a una tercera persona denominada como FIDECOOP. No obstante, alegó que la documentación que fue solicitada no procedía por ser impertinente. Añadió, que su objeción sobre no entregar documentación inmaterial fue tomada como excusa de FIDECOOP para retirar la oferta de compraventa.

Luego de varios trámites procesales que no son necesarios de pormenorizar, el 14 de noviembre de 2023, la Cooperativa de Porcicultores de Puerto Rico (en adelante, por sus siglas "COOPORCI-PR), compareció al presente caso. Ello, mediante un escrito intitulado "*Urgente Comparecencia Especial y Depósito Judicial.*" En esta comparecencia informó su interés de adquirir la finca en cuestión. Esto, junto a los bienes muebles e inmuebles y permisos estatales y federales que conforman el negocio *"Macelo La Muda."* Para el logro de lo anterior, presentó una oferta por la cantidad de $2,500,000.00. De los cuales depósito en el foro recurrido la cantidad de $25,000.00. Además, se comprometió a completar la adquisición de la propiedad en un término de noventa (90) días. Ello, luego de que el tribunal de instancia aprobara la compraventa y las partes se expresasen sobre el referido negocio jurídico. Finalmente, peticionó al foro recurrido la celebración de una vista, a los efectos de evaluar la oferta que presentó.

En reacción, el 22 de noviembre de 2023, la parte recurrida presentó una "*Moción Sobre Oferta De Compraventa De COOPORCI-PR*)." En esencia, esbozó las reclamaciones estales y federales que existían en contra de la comunidad de bienes, y expresó su conformidad con la oferta realizada por COOPORCI-PR. Por su parte, el 4 de enero de 2024, la parte

peticionaria presentó un "*Escrito en Cumplimiento de Orden.*" En síntesis, expresó que no aceptaría la oferta cursada por COOPORCI-PR. Argumentó, que la oferta era inadecuada. A su vez, expresó que el copeticionario Javier O´ farrill Morales (en lo sucesivo, "señor O' farill"), le había presentado a la parte recurrida una mejor oferta para adquirir su participación, la cual rechazó.[4]

El 20 de febrero de 2024, el foro recurrido celebró una "*vista de estado de los procedimientos.*" Esta se efectuó a los fines de discutir las ofertas realizadas por COOPORCI-PR y la parte peticionaria. Al no existir acuerdo entre las partes, el tribunal de instancia ordenó a la parte peticionaria que expresara por escrito sus razones para rechazar la oferta presentada por COOPORCI-PR. A su vez, ordenó a las partes informar los motivos por las cuales la propiedad no se debería vender en pública subasta, en caso de que la elección de una oferta no fuera una alternativa.

En atención a lo ordenado, el 21 de marzo de 2024, la parte peticionaria presentó un "*Escrito en Cumplimiento de Orden.*" En esencia, reiteró los argumentos esbozados en su anterior "*Escrito en Cumplimiento de Orden*" de fecha del 4 de enero de 2024. Añadió, que la oferta era inadecuada, dado que, era inferior a la tasación de la propiedad que se realizó en el año 2019. En respuesta, el 3 de abril de 2024, la parte recurrida presentó una "*Réplica a Escrito en Cumplimiento de Orden.*" En síntesis, alegó que la parte peticionaria no presentó las razones para rechazar la oferta de COOPORCI-PR más allá de encontrarla irrazonable. Particularmente adujo, que la oferta cursada por el señor O´ farrill no indicaba una fuente de financiamiento. Además, expresó que no incluía la forma en que se cumplirían las obligaciones pendientes con los acreedores de la cosa común.

---

[4] El 11 de enero de 2024, la parte recurrida, presentó una "*Urgente Reacción a Escrito en Cumplimiento de Orden y Solicitud de Vista.*" **Mediante está, argumentó que el señor O'Farril no le había presentado una oferta de compraventa. Por el contrario, sostuvo que en realidad le presentó una oferta de sentencia que contenía una propuesta de contrato de arrendamiento con opción de compra. A su vez, esgrimió que el señor O´ farrill estaba impidiendo que se vendiera la propiedad.**

Trabada la controversia, el 7 de mayo de 2024, el foro recurrido notificó la "*Resolución*" que nos ocupa. Mediante esta, autorizó la venta del bien comun a COOPORCI-PR. Ello, bajo el fundamento de que la parte peticionaria no expuso las razones específicas para rechazar la oferta de COOPORCI-PR.

En desacuerdo, el 22 de mayo de 2024, la parte peticionaria presentó una oportuna "*Moción Solicitando Reconsideración de la Resolución Emitida el 18 de abril de 2024.*" Dicha moción fue declarada *No Ha Lugar* por el foro recurrido, mediante una "*Resolución*" notificada el 5 de junio de 2024. Aun en desacuerdo, el 8 de julio de 2024, la parte peticionaria presentó ante nos un recurso de *certiorari*. En el referido recurso esbozó los siguientes señalamientos de error:

> **Primer Error**: Erró el Tribunal de Primera Instancia al ordenar la venta del inmueble objeto de la división de comunidad, a COOPORCI-PR, determinación contraria a lo resuelto en la Sentencia dictada por el Tribunal de Apelaciones en el caso KLCE2018-000978.
>
> **Segundo Error**: Erró el Tribunal de Primera Instancia al obligar a la parte demandada-peticionaria a vender su participación en el inmueble, bajo condiciones irrazonables, cuando dicha parte interesa mantener la propiedad.
>
> **Tercer Error**: Erró el Tribunal de Primera Instancia al ordenar la venta del inmuble a un tercero, ignorando el derecho de adquisición preferente o tanteo que corresponde a los demandados-peticionarios.

Con el beneficio de la comparecencia de ambas partes, procedemos a disponer del asunto que nos ocupa.

**II.**

**A.    *Certiorari***

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *Orthopedics Prod. Of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004 (2021); Art. 670 del Código de Enjuiciamiento Civil de 1933, conocido como Ley de Recursos Extraordinarios, 32 LPRA sec. 3491. La característica distintiva del certiorari "se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar

sus méritos". Íd. Ahora bien, el ejercicio de esta discreción no es absoluto. Por ello, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece una serie de instancias en las que los foros apelativos pueden ejercer su facultad revisora:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

De igual modo, la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, delimita los criterios para la expedición de un auto de certiorari. Así pues, estas consideraciones "orientan la función del tribunal apelativo intermedio para ejercer sabiamente su facultad discrecional". *Rivera Gómez v. Arcos Dorados Puerto Rico*, supra. La aludida regla permite que el análisis del foro apelativo intermedio no se efectúe en el vacío ni se aparte de otros parámetros al momento de considerar los asuntos planteados. Íd.; *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 848 (2023); *800 Ponce de León v. American International*, 205 DPR 163, 176 (2020). De conformidad con lo anterior, la Regla 40, supra, dispone los siguientes criterios:

> A.  Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B.  Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C.  Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D.  Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E.  Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F.   Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G.   Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B.

Los foros revisores no debemos intervenir en las determinaciones de hechos del tribunal de instancia, "salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad o incurrió en craso abuso de discreción o en error manifiesto. *Citibank v. ACBI,* 200 DPR 724, 736 (2018). Esta norma permite que el foro primario actúe conforme a su discreción judicial, que es la facultad que tiene "para resolver de una forma u otra, o de escoger entre varios cursos de acción". Id. pág. 735; *Graciani Rodríguez v. Garage Isla Verde, LLC*, 202 DPR 117, 132 (2019). El ejercicio esta discreción "está inexorable e indefectiblemente atado al concepto de la razonabilidad". Id.; *Pueblo v. Hernández Villanueva*, 179 DPR 872, 890 (2010). Así pues, "la discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". Id.; *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 729 (2016). No obstante, un tribunal incurre en abuso de discreción cuando ignora sin fundamento un hecho material, concede demasiado peso a un hecho inmaterial, y fundamenta su determinación en ese hecho irrelevante, o cuando a pesar de examinar todos los hechos del caso hace un análisis liviano y la determinación resulta irrazonable. Id. pág. 736. En esos casos, los foros apelativos ostentamos la facultad discrecional para expedir el recurso de certiorari y ejercer nuestra función revisora.

**B.   División de una Comunidad de Bienes:**

La comunidad de bienes existe "cuando la propiedad de una cosa o de un derecho pertenece proindiviso a varias personas." 31 LPRA sec. 1271; *Molina González v. Álvarez Gerena*, 203 DPR 442, 450 (2019).[5] Nuestro ordenamiento jurídico regula la llamada comunidad romana, en la que cada comunero tiene una cuota ideal o alícuota de la cosa. *Díaz v. Aguayo*, 162 DPR 801, 808 (2004). En ausencia de un contrato o

---

[5] Hacemos referencia al Código Civil de 1930, dado que, los hechos del presente caso tuvieron inicio bajo su vigencia.

disposiciones especiales, dicha comunidad se regirá supletoriamente por las disposiciones del código civil. 31 LPRA sec. 1271; *Matores Rivera v. Soler Ortiz*, 2024 TSPR 50.

En lo que nos atañe, la división de una comunidad de bienes puede tener lugar en cualquier momento, a través de una petición instada por cualquiera de los comuneros. *Díaz v. Aguayo*, supra, pág. 809. La razón de ello estriba en que ninguno de los miembros de la comunidad está obligado a permanecer en ella. *Íd.* La acción de división es de naturaleza imprescriptible. *Matores Rivera v. Soler Ortiz*, supra. Para el logro de ésta, se seguirán las normas que regulan la división de la herencia. *Díaz v. Aguayo*, supra, pág. 809; *Cruz v. Sucn. Landrau Díaz,* 97 DPR 578, 588 (1969).

Siendo así, el proceso de división tendrá como operaciones principales el inventario, el avalúo, la liquidación y la división y adjudicación de la cosa común. *Matores Rivera v. Soler Ortiz*, supra. Por medio del inventario se describirán los bienes de la comunidad y a través del avalúo se tasarán o valorarán los referidos bienes. *Íd.* Por su parte, en la liquidación se deducirán los pasivos de dichos bienes y se fijará el activo neto. *Íd.* Finalmente, la división concluirá al señalar la cuota de cada comunero y entregar a cada codueño lo que le corresponde con exclusión de los demás. *Íd.*

**C.     Derechos de Adquisición Preferente**:

Tanto el tanteo como el retracto y la opción de compra son derechos de adquisición preferente. *González v. Sucn. Cruz*, 163 DPR 449, 456 (2004). En el caso específico del tanteo, "opera previo a la enajenación y faculta a su titular a adquirir una cosa que va a ser enajenada por su propietario." *Íd*, pág. 455. En otras palabras, este titular ostenta preferencia de adquisición ante terceros que deseen adquirir el bien. *Íd.* Ello, por el mismo precio que abonaría el tercero. *Íd.* El tanteo puede surgir a la vida jurídica por medio de un convenio o por disposición de ley. *Íd,* pág. 456.

En cuanto al derecho de retracto, este permite que dentro de una comunidad de bienes un copropietario pueda recuperar lo vendido "en el caso de enajenarse a un extraño la parte de todos los demás codueños o alguno de ellos." *Moreno v. Morales et al.,* 187 DPR 429, 435 (2012). El derecho de retracto da paso a que el titular se subrogue en lugar del que adquiere, bajo las mismas condiciones pactadas. *Íd.* Para que exista el retracto de comuneros deben concurrir los siguientes requisitos:

a). Que exista la comunidad de bienes; la acción se inste por un copropietario y se trate de una enajenación de parte de la cosa común a favor de un extraño a la comunidad.

b). La presentación de la demanda dentro de nueve días contados desde la fecha en que se practique la inscripción en el Registro de la Propiedad (no desde la fecha del asiento de presentación), y en su defecto, desde que el retrayente hubiera tenido conocimiento del otorgamiento de la escritura de venta, o desde su consumación.

c). Que el demandante consigne con su demanda, en el tribunal que conozca del juicio (1) el precio real o verdadero de la enajenación, (2) los gastos del contrato, (3) cualquier otro pago legítimo hecho para la enajenación, y (4) los gastos necesarios y útiles hechos en la cosa enajenada, si son conocidos, o si no lo fuesen que dé fianza de consignarlos luego que lo sean.

d). Que el retrayente se comprometa a no vender la participación dominical que retraiga durante cuatro años.

Véase, *Fuertes v. Arzón*, 81 DPR 491, 497-498 (1959).

**III.**

En el recurso presentado, la parte peticionaria aduce que incidió el foro recurrido al ordenar la venta de la cosa común a una tercera persona (COOPORCI-PR), sin que previamente se hayan identificado los bienes a dividir y su valor. Además, sostiene que de los $2,500,000.00 ofrecidos por COOPORCI-PR, le corresponderían a la parte recurrida $1,250,000.00 por su participación en el bien común. Toda vez que, dicha parte es copropietaria de un cincuenta por ciento (50%) de dicho bien, y por consiguiente de la mitad de los $2,500,000.00 ofrecidos. Cónsono con lo anterior, divide la cuantía total ofrecida para argumentar que su oferta supera en valor la cantidad de $1,250,000.00. Además, aduce que tiene un derecho de preferencia sobre COOPORCI-PR para adquirir la cuota de la parte recurrida, dado que, COOPORCI-PR es un extraño para la

comunidad de bienes. De otra parte, alega que la determinación del foro recurrido es contraria a lo resuelto por este Tribunal en el caso KLCE2018-00978. Fundamenta su posición, bajo el argumento de que en dicho caso se expresó que no había impedimento en que le pueda desembolsar a la parte recurrida el dinero que le correspondería por sus derechos propietarios.

En oposición, la parte recurrida arguye que en el referido caso KLCE2018-00978 el Tribunal de Apelaciones ordenó la división de la comunidad de bienes. Añade, que conforme a lo ordenado las partes debían gestionar la tasación y avaluó correspondientes para tramitar el proceso de división. A su vez, argumenta que es en realidad la parte peticionaria la que ha incumplido con el mandato de disolver la comunidad de bienes. Esto, dado que, entorpeció el proceso de venta al primer oferente (FIDECOOP), y no fundamentó su posición para rechazar la oferta de COOPORCI-PR.

Nuestro sistema jurídico está forjado bajo la premisa de que una comunidad de bienes no deber ser eterna. Entre otras cosas, por los potenciales conflictos que se puedan suscitar entre sus miembros y el menoscabo que se pueda dar en la flexibilidad de tomar decisiones respecto a la cosa común. Véase, *Moreno v. Morales et al*, supra, pág. 436; y *Noble v. Rodríguez*, 69 DPR 482 (1949). A esos efectos, todo comunero, en cualquier momento, puede peticionar la división de su comunidad de bienes. En el presente caso, la referida división se declaró procedente mediante una "*Sentencia*" emitida por este Foro en el caso KLCE2018-00978. Dicha "*Sentencia*" advino final y firme. De igual modo, desde la aludida fecha, las partes tenían el deber de llegar a acuerdos sobre el proceso de dividir la comunidad de bienes, tales como presentar un inventario y tasación. La presentación de los referidos documentos ya fue realizada. De la misma manera, fueron informadas al foro recurrido las personas que son acreedoras de la comunidad en cuestión, y las sumas

adeudadas a estas.[6] Por lo cual, las operaciones del proceso de división ya están en desarrollo. Ello, no es contrario a lo dictaminado en el caso KLCE2018-00978, cuyo mandato tenía como fin la procedencia de la división de la comunidad de bienes. Ante ello, el primer error no fue cometido.

De igual modo, el segundo y tercer error tampoco fueron cometidos. De entrada, desde su mandato, el proceso de división de la presente comunidad de bienes lleva en trámite un periodo de seis (6) años. En el transcurso de dicho periodo, el proceso ha tenido múltiples dificultades por falta de acuerdo entre las partes, lo que ha requerido la intervención del tribunal para lograr su consecución. Por otra parte, es meritorio destacar que en este procedimiento ambas partes han tenido conocimiento de las ofertas cursadas por terceras personas. Asimismo, han tenido amplia oportunidad de someter sus posiciones al respecto. De igual manera, la parte peticionaria ha tenido tiempo suficiente para presentar ofertas a la parte recurrida, las cuales garanticen la disponibilidad de fondos para lograr una adecuada transmisión de la titularidad.

Cabe resaltar, que antes de que el foro recurrido ordenara la venta de la propiedad a COOPORCI-PR, hubo otro oferente (FIDECOOP), para el cual la parte peticionaria también presentó objeciones. En cuanto a COOPORCI-PR, la parte peticionaria tuvo dos (2) oportunidades de expresar por escrito sus razones para rechazar la oferta que dicha cooperativa había cursado. Sin embargo, sus expresiones fueron sucintas y carentes de especificidad. A dichas oportunidades se le añade, que el tribunal de instancia celebró una vista en aras dilucidar tanto la oferta de COOPORCI-PR como la oferta presentada por la parte peticionaria. Por consiguiente, las partes tuvieron varias instancias para exponer sus argumentos e intentar llegar a algún acuerdo. Siendo así, la orden de venta no se efectuó bajo condiciones irrazonables. Esto, dado que, procedía dentro de un proceso en el cual la orden de dividir la comunidad de bienes

---

[6] Véase, "*Moción Sobre Oferta de Compraventa de COOPORCI-PR*," pág. 49-50 del Índice del Apéndice.

era final y firme y las partes no habían podido concretar acuerdos extrajudiciales al respecto.

Por otro lado, los derechos de adquisición preferente requieren para su realización que su titular advenga en conocimiento de la venta. En este caso, la parte peticionaria siempre mantuvo conocimiento de los trámites para la enajenación de la cosa común. Por consiguiente, tuvo la amplia oportunidad de igualar la cuantía y condiciones ofrecidas por las terceras personas. Así, como de llegar a acuerdos con la parte recurrida en torno a la compraventa de la cosa común, más allá de solo limitarse a argumentar que le ofreció por su participación una cuantía mayor a la ofrecida por COOPORCI-PR. En virtud de lo expuesto, tampoco le asiste la razón a la parte peticionaria en el segundo y tercer error. En consecuencia, y al amparo de la Regla 40, *supra* de Nuestro Reglamento, *expedimos* el recurso de epígrafe y *confirmamos* la determinación recurrida.

**IV.**

Por los fundamentos expuesto, expedimos el auto de *certiorari* presentado, y *confirmamos* la determinación recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones